## TERESA M. GUARAGNO *v.* WILLIAM L. GUARAGNO
### (AC 32740)

DiPentima, C. J., and Sheldon and Bishop, Js.

Argued December 6, 2012—officially released March 19, 2013

*David V. DeRosa*, for the appellant (defendant).

*Kathleen M. Zarro*, for the appellee (plaintiff).

*Opinion*

BISHOP, J. This appeal arises from the court's judgment, dated September 2, 2010, on the parties' post-marital dissolution cross motions for contempt in which

the court granted, in part, the motion filed by the plaintiff, Teresa Guaragno, and denied the motion filed by the defendant, William Guaragno. On appeal, the defendant claims that the court improperly: (1) found him in contempt of court for his failure to pay certain healthcare expenses incurred for the benefit of the parties' minor children in accordance with the terms of the parties' marital dissolution agreement and judgment;[1] (2) exonerated the plaintiff from any liability arising from her management of Next Step Technologies, LLC (Next Step), and ordered him, inter alia, to reimburse the plaintiff in connection with a certain Next Step credit card transaction; and (3) determined that the plaintiff should be liable to him for only $2000 in attorney's fees incurred in conjunction with the creation of a trust contemplated by the terms of the parties' marital dissolution agreement and judgment. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our consideration of the issues on appeal. At the time of the parties' marital dissolution on October 17, 2008, they had three minor children for whom the judgment contained certain healthcare provisions. Additionally, they had operated Next Step, which, in essence, they agreed ultimately would become the defendant's sole property. In conjunction with their marital dissolution, the court incorporated the parties' separation agreement into its judgment, which contained the following provisions relevant to the issues at hand.

In article 5 of the separation agreement, entitled MEDICAL INSURANCE AND EXPENSES, § 5.1 provides in relevant part: "b. The parties shall equally pay for the benefit of each minor child all unreimbursed

---

[1] On October 17, 2008, the court, *Reynolds J.*, rendered judgment dissolving the parties' marriage and incorporating the parties' separation agreement.

reasonable medical, surgical, hospital, optical, psychiatric, psychological and nursing expenses, the costs of prescription drugs, deductible and co-pay costs, and dental and orthodontia expenses. No psychiatric, psychological, orthodontic, or elective, non-emergency surgery or extraordinary medical treatments shall be incurred without the prior consent of both parties, whose consent shall not be unreasonably withheld. The provisions of the maintenance of health insurance are subject to and in accordance with Connecticut General Statutes § 46b-84e.

"c. Neither party, without the prior consent of the other party, which consent shall not be unreasonably withheld, shall incur non-emergency expenses pursuant to this Article, if they are not covered by the medical insurance carrier that is in effect at the time. Both parties shall use service providers which are approved by the medical insurance carrier to the extent practicable and whenever reasonably possible. Both parties shall follow all rules required by the health insurance carrier prior to obtaining non-emergency treatment. Each party shall provide to the other all bills and explanations of benefits within fifteen (15) days of their receipt and reimburse the other party the appropriate un-reimbursed portion within seven (7) days of presentation of such bill and explanation of benefits. The parties shall cooperate with each other in the event that either of them decides to appeal any decision of the health insurance carrier. . . ."

In article 9, entitled "NEXT STEP TECHNOLOGIES, LLC," the separation agreement provides: "9.1 The parties are the owners of Next Step Technologies, LLC (hereinafter [Next Step]). The [plaintiff] shall immediately resign as President of [Next Step] and simultaneously transfer her entire interest in [Next Step] to Kenneth J. Ayers, Trustee, for the benefit of [the defendant]. The trustee shall manage and operate a trust until

January 5, 2011, at which time the trust shall terminate and the [defendant] shall be entitled to the corpus thereof. During the trust period, the Trustee shall specifically be granted authority to hire a business manager to operate and manage the financial affairs of [Next Step] and follow Medicare rules and regulations.

"The [plaintiff] further agrees to tender to the [defendant] keys to the business (except for one set which can be used for emergency purposes only until he and the business vacate the property). The [plaintiff] shall also tender the keys to the [Next Step] post office box, Prius, Porsche and boat and relinquish her password for company computer access, and . . . remove her name from all [Next Step] bank accounts. The [plaintiff] shall make no claim for employment-related benefits associated with [Next Step], other than her COBRA election, as more specifically set forth in [the separation agreement].

"b. The [defendant] shall immediately withdraw with prejudice the civil action entitled *Next Step Technologies, LLC* vs. *Teresa Guaragno*, which matter is pending in the Superior Court, Judicial District of Danbury bearing docket number DBD-CV-08-4009436-S.[2]

"The [plaintiff] shall not have any ongoing obligations to [Next Step] and she shall not sustain any liability with regard to [Next Step]. From the date of her resignation as President and the transfer of her interest to the Trustee, the [defendant] shall hold the [plaintiff] harmless from and against all liability regarding the company. In the event the parties are personally liable for any assessment, fine or penalty or are sued individually by any governmental agency for any actions arising from the operations of [Next Step] prior to the date of

---

[2] We refer in this opinion to the civil action commenced by the defendant on behalf of Next Step against the plaintiff as the Next Step action.

dissolution, they shall equally be responsible for such liability."

The plaintiff filed a postjudgment motion for contempt dated January 13, 2010, against the defendant in which she claimed, inter alia, that the defendant had failed to reimburse her for one half of certain medical expenses she had incurred on behalf of the children. She claimed, as well, that on October 16, 2008, the day before the parties' dissolution judgment, she had paid a bill for $11,695 received from an Next Step creditor with a Next Step American Express credit card backed by her personal guarantee, but that, after the dissolution judgment, the defendant reversed the payment transaction, with the result that American Express sought reimbursement from her. She alleged that she paid the sum of $7000 from her personal funds to satisfy this Next Step debt, an amount for which she sought reimbursement from the defendant in addition to attendant attorney's fees.[3]

On April 5, 2010, the defendant filed a postjudgment motion for contempt in which he alleged, inter alia, that the plaintiff had failed to transfer her interest in Next Step to a trustee for the defendant's benefit "immediately," as required by the separation agreement, and that, because of the plaintiff's delay, he had been required to retain counsel to create the necessary trust instrument and to secure an accountant to perform

---

[3] The plaintiff's motion for contempt also included allegations that she was personally obligated to make other payments on behalf of Next Step from her personal funds for which she sought reimbursement, that the defendant failed to cause Next Step to vacate premises utilized by another business formerly owned by the parties, but was now owned by the plaintiff, and that the defendant had failed to cooperate in regard to her entitlement to COBRA continuation health coverage. See Consolidated Omnibus Budget Reconciliation Act of 1985, 29 U.S.C. §§ 1161 through 1168. From our review of the court's memorandum of decision and later articulation, it does not appear that these claims were litigated; nor are these issues presented on appeal.

services in conjunction with the late transfer. He alleged further that while the plaintiff had been in sole control of Next Step, prior to the dissolution judgment and until she transferred her interest to a trustee, she had failed to meet certain business obligations arising before and after the dissolution judgment totaling in excess of $500,000.[4]

The court, *Hon. Sidney Axelrod*, judge trial referee, found that the plaintiff did incur unreimbursed medical expenses and that the defendant was liable for one half of those expenses. The court, in its discretion, did not hold the defendant in contempt for failing to pay the unreimbursed medical expenses, but ordered the defendant to pay within thirty days of the judgment. The court, however, did hold the defendant in contempt for reversing the payment on the Next Step American Express card and awarded attorney's fees to the plaintiff. The court further found that the defendant was not entitled to reimbursement from the plaintiff for his claims regarding the plaintiff's failure to meet certain business obligations. Finally, the court did not hold the

---

[4] The defendant also claimed in his motion for contempt that the plaintiff had violated the provision of the parties' separation agreement regarding custody and visitation that neither party would relocate from his or her present location without providing the other party sixty days written notice. In this regard, the defendant alleged that the plaintiff had relocated from her prior residence without providing him the requisite notification. Finally, and in regard to other provisions in the agreement regarding the children, the defendant claimed that the plaintiff had incurred expenses and demanded reimbursement from him for certain extracurricular activities to which the defendant had not agreed. For this claimed infraction, the defendant sought an order that the plaintiff be solely liable for the costs of the children's extracurricular activities for which she did not seek his prior permission.

Notwithstanding the breadth of the defendant's contempt motion, the defendant's claims on appeal are limited to the court's response to his allegations relating to Next Step and the parties' respective obligations regarding its ownership and liabilities arising before and after the dissolution judgment, and to the court's treatment of the plaintiff's motion for contempt regarding healthcare expenses and her requests for reimbursement and attorney's fees.

plaintiff in contempt for failing to create the trust. The court, however, did order the plaintiff to pay the defendant $2000 for the creation of the trust and awarded attorney's fees for counsel for the defendant. This appeal followed.

Before turning to an analysis of the defendant's claims on appeal, we examine the appropriate standards of review. As our Supreme Court previously has stated concerning separation agreements in marital dissolutions: "A judgment rendered in accordance with such a stipulation of the parties is to be regarded and construed as a contract. . . . Accordingly, [o]ur resolution of the [defendant's] claim is guided by the general principles governing the construction of contracts. A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Citations omitted; internal quotation marks omitted.) *Issler* v. *Issler*, 250 Conn. 226, 235, 737 A.2d 383 (1999). "If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation marks omitted.) *O'Connor* v. *Waterbury*, 286 Conn. 732, 744, 945 A.2d 936 (2008).

Additionally, as to judicial decision-making in marital dissolution matters generally, this court has stated: "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has

abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *McKeon* v. *Lennon*, 131 Conn. App. 585, 597, 27 A.3d 436, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011).

Finally, this court reviews the trial court's determination on a motion for contempt for an abuse of discretion. "The abuse of discretion standard applies to a trial court's decision on a motion for contempt. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . The resolution of conflicting factual claims falls within the province of the trial court. . . . The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . We cannot retry the facts or pass on the credibility of the witnesses. . . . A reviewing authority may not substitute its findings for those of the trier of the facts." (Internal quotation marks omitted.) *Oldani* v. *Oldani*, 132 Conn. App. 609, 625–26, 34 A.3d 407 (2011). With these standards of review in mind, we turn to the defendant's claims.

I

We first address the defendant's claim that the court improperly found him in contempt for his failure to pay

one-half the cost of certain unreimbursed healthcare expenses incurred by the plaintiff on behalf of the minor children, and that the court incorrectly ordered him to pay the sum of $818.10, representing one-half the cost of those expenses. Although the defendant does not challenge the amount in question as actually expended, he claims that he should not be liable for these expenses because the plaintiff failed to follow the dictates of the parties' separation agreement that required her to seek his prior approval of such expenses before incurring them.

Contrary to his claim regarding this issue, the defendant was not found in contempt of court regarding these expenses. Instead, the court explicitly declined to make such a contempt finding. The court did, however, order the defendant to pay the claimed amount on the basis of its finding that the defendant did not object to the provision of healthcare that resulted in these costs. In relevant part, the court opined: "The court does find that the plaintiff did not provide to the defendant advance notice of incurring those charges and therefore he did not give consent to those charges. The defendant would not have objected to any of those charges being incurred if he had been given advance notice. Regardless of what his rights would have been if he had been given advance notice and had objected during the charges, in this case the defendant admits that he would not have objected to any of those charges and would have given consent to them."

In requiring the defendant to make this payment, the court reasoned that, although the plaintiff did not seek and obtain the defendant's prior approval, the parties' separation agreement provided that neither would unreasonably withhold consent for such treatment and associated costs, and that, since the defendant would not have withheld consent, he should, as a practical matter, be obligated to pay one half of the treatment

costs. In coming to this determination, we find that the court acted well within the bounds of its discretion.

## II

The defendant next claims that the court improperly exonerated the plaintiff from any liability arising from her management of Next Step, improperly ordered him to reimburse the plaintiff in connection with a certain Next Step credit card transaction, and improperly rejected his own claim for reimbursement. We reject these claims.

With respect to the claims arising out of the plaintiff's management of Next Step, the defendant argued that "the company that was finally transferred to the defendant was awash in debts and financial obligations that were incurred during the stewardship of the plaintiff. Upon his receipt of the management of Next Step, the defendant had to contend with taxes, interest, fines, penalties, and audits, from local, state, and federal authorities, including the [Internal Revenue Service], [Department of Revenue Services], Medicare, and the Labor Department. The retirement plan of the company had not filed a mandatory return." The defendant further claimed that: "After judgment entered, [he] discovered that, while [Next Step's] finances were controlled by the plaintiff, [Next Step] had failed to meet its payroll in the amount of over $12,000, and had failed to pay debts of the company totaling approximately $500,000."

In responding to the defendant's claims, the court made the following additional relevant factual findings. The court found that, within one week of the dissolution judgment, the plaintiff resigned as president of Next Step and removed her name from all records as a Next Step owner, and that, since the dissolution judgment, she had no access to Next Step. In sum, the court found that since the marital dissolution, the plaintiff had not participated in the activities of the business. The court

further found that, subsequent to the dissolution judgment, in January, 2009, Ayers declined to act as trustee as contemplated in the parties' separation agreement, and that although the plaintiff initially tried to find a substitute trustee, the defendant retained the law firm of Shipman & Goodwin, LLP (law firm), in January, 2009, to create the trust instrument. Finally, the court found that the plaintiff transferred her interest in Next Step to the trust created by the law firm as soon as the trust document was prepared.

The defendant also claims that the court improperly ordered him to pay attorney's fees and to reimburse the plaintiff in connection with a certain Next Step credit card payment she was obligated to make as a result of the defendant's postjudgment conduct. The court found that, prior to the date of the dissolution judgment, the plaintiff had an American Express card that was used for Next Step expenses and for which she also bore personal liability. The court found further that, on October 16, 2008, she utilized Next Step's American Express card to pay a Next Step creditor the amount of $11,695, but that, after the dissolution judgment, the defendant reversed the credit card payment, with the result that American Express then sought to hold the plaintiff personally liable for the $11,695 payment it had made to the Next Step creditor. Finally, the court found that the plaintiff settled this claim with American Express in March, 2009, by paying American Express $7000 from her own funds.

Both parties made claims regarding this payment. The plaintiff sought reimbursement of the $7000 she paid to American Express and attorney's fees. The defendant argued that, as a result of the plaintiff's settlement of this claim for $7000, he received a Form 1099 issued by American Express for the sum of $6798, characterized as "other income" and representing the difference between the amount accepted by American

Express and its payment of the $11,695 to the Next Step creditor. In making this argument, the defendant reasoned that, pursuant to the parties' separation agreement, both parties were personally liable for actions arising from their operations of Next Step prior to the date of the dissolution judgment. The court rejected the defendant's claim regarding the American Express card settlement and its tax consequences. The court also rejected the defendant's claims that the plaintiff should be required to reimburse him for payments made on other Next Step liabilities incurred before the dissolution judgment.

The court rejected the defendant's arguments on two bases. As to the defendant's obligation to pay taxes on the amount of the Next Step debt forgiven by American Express in its settlement with the plaintiff, the court relied on the parties' separation agreement which provided, in part, that the "plaintiff shall not have any ongoing obligations to [Next Step] and she shall not sustain any liability with regard to [Next Step]." The court relied, as well, on the provision of the separation agreement through which the defendant agreed to withdraw, with prejudice, the Next Step action, in which Next Step claimed, in essence, that due to the plaintiff's alleged failures to properly manage the affairs of the business before the dissolution judgment, Next Step had suffered substantial harm, including significant indebtedness.[5] The court reasoned that, because the

---

[5] In relevant part, in the Next Step action, it alleged the following:

"8. Ms. Guaragno has failed to discharge her fiduciary duties as Manager of Next Step, as set forth in Section 5.5(a) of the Operating Agreement. As a direct and proximate cause of Ms. Guaragno's failure to manage the LLC carefully and competently, the LLC has suffered and will suffer substantial damages. . . .

"10. Due to Ms. Guaragno's failure to timely deliver business correspondence, Next Step has not paid several bills submitted by its insurance providers, vendors, and suppliers for services provided. As a direct and proximate result of Ms. Guaragno's negligence, important relationships with its insurance providers, vendors, and suppliers have been unnecessarily placed in jeopardy."

defendant had agreed to withdraw such claims against the plaintiff with prejudice, he was prevented from raising them in the form of a contempt motion in the present action. In addition to rejecting the defendant's claim for reimbursement flowing from the tax consequences of the American Express settlement, the court found the defendant in contempt of the dissolution judgment, ordered the defendant to reimburse the plaintiff the sum of $7000, and awarded attorney's fees to her in the amount of $1000 in regard to this finding.

As to the plaintiff's potential liability for Next Step obligations, the defendant argued that the plaintiff should share personal liability for the business obligations arising both before the dissolution judgment and after until she transferred her interest in Next Step to the trust. In making this claim, the defendant argued that two consecutive sentences of the separation agreement should be read together, with the result that the plaintiff should only be relieved of personal liability for Next Step debts as of the date on which she transferred her interest to the trust.[6] The court disagreed and reasoned, as to prejudgment liabilities of Next Step, that the plaintiff was exonerated by the defendant's withdrawal, with prejudice, of the Next Step action in conjunction with the dissolution judgment. As to postjudgment liabilities, the court found that the express terms of the separation agreement, entered into at the time of the dissolution judgment, clearly and unambiguously provided that she would not have any ongoing obligation to Next Step and that she would not sustain any liability with regard to the business.

---

[6] The relevant sentences in the separation agreement are as follows: "The [plaintiff] shall not have any ongoing obligations to [Next Step] and she shall not sustain any liability with regard to [Next Step]. From and after the date of her resignation as president and the transfer of her interest to the Trustee, the [defendant] shall hold the [plaintiff] harmless from and against all liability regarding the company."

We find no fault with the soundness of the court's reasoning or with the court's exercise of its discretion with regard to these related claims. As found by the court, the plaintiff attempted to pay an Next Step bill with an American Express card dedicated to the business but for which she also had personal liability. If the defendant had not reversed this payment, the result would have been payment of the business's indebtedness with a credit card dedicated to that purpose. However, because of the defendant's conduct in reversing this payment after the marital dissolution, the plaintiff was obligated to utilize her personal funds to compromise a claim made personally against her by American Express. As a consequence of the parties' agreement, however, she should not have been exposed to any personal liability after the marital dissolution for Next Step debts and she became liable on this indebtedness only because of the defendant's inappropriate conduct reversing the American Express payment. We agree, as well, with the court's analysis of the import of the withdrawal of the Next Step action against the plaintiff and the significance of the separation agreement language exonerating her from any personal liability regarding Next Step.

The defendant's claim that the language exonerating the plaintiff, when read in conjunction with the next sentence regarding the transfer of the business, leads to the conclusion that he was required to hold the plaintiff harmless from any and all liability regarding Next Step only once she transferred her interest in Next Step to the trustee, misreads the import of this sentence. The provision he cites concerns only the timing of the onset of the defendant's obligation to hold the plaintiff harmless from any Next Step-related liabilities, but does not affect the other language of the separation agreement providing that the plaintiff should not have any ongoing obligation to Next Step.

In sum, we conclude that the record amply supports the court's factual findings and we believe that the court's legal conclusions regarding the import of the relevant language of the separation agreement are supported by the record and the application of law to the properly found facts. Further, the court's award of attorney's fees was well within the ambit of the court's discretion. See *Esposito* v. *Esposito*, 71 Conn. App. 744, 748, 804 A.2d 846 (2002).

### III

The defendant finally claims that the court should have awarded him an amount greater than the award of $2000, in recognition of the substantially greater legal fees that he claims to have incurred for the preparation of the trust instrument necessary to transfer Next Step to his sole ownership. We reject this claim.

The following additional facts are relevant to our discussion of this issue. As noted previously in this opinion, the parties' separation agreement required the plaintiff to "immediately resign as President of [Next Step] and simultaneously transfer her entire interest in [Next Step] to Kenneth J. Ayers, Trustee, for the benefit of [the defendant]." The court found, and the parties do not dispute, that although the plaintiff resigned as president of Next Step within one week from the date of dissolution and took other steps to remove herself from the operations of the business, she did not simultaneously transfer her interest to Ayers. Rather, in January, 2009, Ayers indicated that he would not act as trustee. The court found, further, that while the plaintiff initially attempted to find someone else to serve as trustee, the defendant also sought the assistance of an attorney to create the necessary trust document. The court indicated that the defendant retained the law firm in January, 2009, to draft the trust document, in addition to "other purposes," that the trust document was

drafted by the law firm the following summer, and that the plaintiff executed it immediately.

In responding to the defendant's motion for contempt and request for fees in regard to the creation of the trust, the court carefully examined both the express language of the agreement and its general tenor. As to the former, the court found that, "there was no specific and definite language in the separation agreement requiring the plaintiff to create the trust." Accordingly, the court declined to hold the plaintiff in contempt for her failure to have the trust created.[7] Regarding the general tenor of the agreement, however, the court reasoned that, because the plaintiff undertook to transfer her interest to the trustee, it would be consistent with such obligation that the plaintiff should be held responsible for the legal fees attendant to creating the trust. Accordingly, the court turned to the evidence regarding fees assessed by the law firm for this purpose. In that regard, the court found that the defendant failed to provide adequate proof of the legal costs in preparing the trust document. Although the defendant presented an invoice from the law firm for $21,639.75, which was captioned "Transfer of Business," the court found that the defendant had failed to provide adequate evidence of the actual cost of preparing the trust document to warrant an order that the plaintiff pay the full invoice.[8]

---

[7] We note that the defendant has not challenged this determination on appeal.

[8] It is noteworthy that the invoice was sent to:

"Next Step Technologies, LLC

"Attention: William Guaragno

"9 Berkshire Blvd.

"Bethel, CT 06801"

Because it appears that Next Step, not the defendant, was billed for this work, one can reasonably question the propriety of an order that the plaintiff make any payment regarding this bill since, as noted by the court, the parties' separation agreement relieved her of personal responsibility for any Next Step liabilities. Because, however, the plaintiff has not filed a cross appeal, we need not decide whether the court incorrectly ordered her to make any payment for the law firm's work.

The court awarded $2000 to the defendant and opined: "No credible evidence has been presented as to the amount of the bill of [the law firm] that relates solely to the creation of the trust and the amount of the bill that was for other purposes." On the basis of our review of the invoice, we find no fault with the court's view that the invoice, by its terms, does not support the defendant's claim for reimbursement in an amount greater than the court's award of $2000. We note that the invoice itemized work by eight individuals spanning the time period from January though December, 2009, ending well after the trust document had been created and executed, and encompassing seventy-two hours of legal effort. We find no fault with the court's conclusion that one cannot reasonably determine, from this document, the law firm work effort dedicated to the creation of the trust. As to the defendant's testimony in this regard, the court is in the best position to make credibility determinations, and the court, in this instance, did not find credible evidence in support of the defendant's claims. It is a bedrock principle of appellate jurisprudence that: "The fact-finding function is vested in the trial court . . . . Appellate review . . . is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." *Kaplan* v. *Kaplan*, 186 Conn. 387, 391, 441 A.2d 629 (1982). Accordingly, and mindful of the court's assessment of the evidence in this regard, we do not find that the court abused its discretion in failing to award the sum sought by the defendant.

The judgment is affirmed.

In this opinion the other judges concurred.