## KRISTEN HAMMOND *v.* JON R. HAMMOND
### (AC 35111)

DiPentima, C. J., and Sheldon and Schaller, Js.

Argued May 22—officially released September 10, 2013

*Erich Henry Gaston,* for the appellant (plaintiff).

*Opinion*

SCHALLER, J. The plaintiff, Kristen Hammond, appeals from the judgment of the trial court granting her motion for contempt against the defendant, Jon R. Hammond. On appeal, the plaintiff claims that the trial court improperly interpreted the parties' May 9, 2011 stipulation, which modified the parties' earlier separation agreement and, as a result, failed to account for her reasonable and necessary household expenses as part of the total arrearage order. The plaintiff further claims that the court abused its discretion in ruling on her motion for contempt by failing (1) to designate her reasonable and necessary household expenses as a fixed amount payable weekly, (2) to award the full measure of attorney's fees requested by the plaintiff, and (3) to enter an arrearage order pursuant to the child support guidelines. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On November 19, 2008, the court dissolved the marriage of the parties. The judgment of dissolution incorporated by reference a written separation agreement between the parties that addressed, inter alia, alimony, the disposition of property and the health care, custody, visitation, and support of the parties' three minor children. Article 5.1 of the agreement

provides for unallocated support in the form of alimony to the plaintiff, until her death or remarriage, and child support until the youngest child turns twenty-three years old, payable in an amount commensurate with the defendant's earnings. Article 6 of the agreement provides that article 5.1 will not "become a post dissolution obligation until the [former] marital residence has been sold and the proceeds of sale distributed." Additionally, article 6 required the defendant to "continue to pay all of the reasonable and necessary expenses of the family consistent with the payments he has been making since the pendency of this dissolution action until such time as the [former marital residence] is sold." The reasonable and necessary expenses of the family are defined to "include . . . the upkeep and expense of the home [and] the living expenses of the family" and are "in lieu of the support schedule under [article] 5 . . . ."

On April 1, 2011, with the former marital residence in foreclosure, the plaintiff filed a motion for modification, claiming that since the date of the dissolution judgment the defendant had not met his obligations as stated in the separation agreement. The plaintiff requested that the court modify the dissolution judgment by, inter alia, increasing child support and ordering immediate income withholding, and increasing alimony. At the modification hearing on May 9, 2011, the parties executed a stipulation, which provided: "This is a modification of present child support as stated in the divorce agreement. It was stated in the divorce agreement that after the sale of the marital home alimony/child support would begin at levels commensurate with earnings. We agree that child support will begin immediately at the amount of $150.00 [per] week, [which] is equal to approximately 50 [percent] of weekly take home earnings." The stipulation was approved by the court, *Marano, J.*, and child support was ordered in the amount of $150 per week.

On April 11, 2012, with the former marital residence still in foreclosure, the plaintiff, now represented by counsel, filed a motion for contempt. She claimed that the defendant was in violation of article 6 regarding the payment of reasonable and necessary household expenses, that he had failed to make payments in lieu of unallocated support as specified in article 5.1 and that he has failed to do so since at least May, 2009.

During a hearing before the court, *Hon. Sidney Axelrod*, judge trial referee, on May 7, 2012, the plaintiff alleged that the stipulation modified article 5.1 of the agreement such that the defendant's obligations to pay child support and expenses pursuant to article 6 ran concurrently. According to the plaintiff's posthearing brief, for the period beginning on the date of the stipulation, May 9, 2011, and ending on the date of the contempt hearing, May 7, 2012, the defendant was responsible for paying the reasonable and necessary household expenses pursuant to article 6, a sum of $3408 per week, as well as child support pursuant to the stipulation of May 9, 2011, a sum of $150 per week. Thus, for the period between May 9, 2011, and May 7, 2012, the plaintiff alleged a total arrearage of $192,132.[1] Judge Axelrod disagreed, stating his initial impression of the stipulation: "As of May 11, 2011, it would appear that the order for . . . payment of [reasonable and necessary household] expenses was vacated."

In his memorandum of decision, issued on September 21, 2012, Judge Axelrod essentially determined that the stipulation modified article 6 of the agreement by supplanting the obligation to pay $3408 per week in reasonable and necessary household expenses with $150 per

---

[1] The plaintiff's calculation of $184,021 arising from $3408 per week over fifty-four weeks is incorrect. The correct product is $184,032. But for the plaintiff's miscalculation, the alleged arrearage for $150 per week over fifty-four weeks, $8100, in addition to the alleged arrearage of $184,032, amounted to a total arrearage of $192,132.

week. The court rejected the plaintiff's argument that the defendant was responsible for weekly payments of $3408 between May 9, 2011, and May 7, 2012. The court instead found that "the agreement entered into on May 9, 2011, was *in lieu of support* under the separation agreement that would not commence until the sale of the marital residence, which had not taken place as of May 9, 2011. The modification of May 9, 2011, modified support only commensurate with earnings of the defendant for the support to begin immediately in the amount of $150 per week." (Emphasis added.) Consequently, the court did not include the $3408 weekly payment in its calculation of the support arrearage from May 9, 2011, to May 7, 2012. Concluding that the $150 weekly payment was the defendant's only support obligation during the period in question, the court determined that the support arrearage amounted to $7800.[2] This appeal followed.

I

The plaintiff first claims that the court erred by failing to account for reasonable and necessary household expenses in its order. According to the plaintiff, the court improperly construed the stipulation as ordering the defendant to pay $150 per week in lieu of support, thereby decreasing his obligation to pay expenses under article 6. We agree.

As a preliminary matter, we set forth the applicable standard of review and legal principles that will guide our analysis. "It is well established that a separation agreement, incorporated by reference into a judgment of dissolution, is a contract between the separating parties. . . . Accordingly, our review of a trial court's interpretation of a separation agreement is guided by

---

[2] Contrary to plaintiff's allegation that fifty-four weeks had ensued between May 9, 2011, and May 7, 2012, the court properly determined that fifty-two weeks had passed and calculated the arrearage accordingly.

the general principles governing the construction of contracts. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Sagalyn* v. *Pederson*, 140 Conn. App. 792, 795, 60 A.3d 367, cert. denied, 308 Conn. 930, 64 A.3d 119 (2013). In the present case, the language of the stipulation is clear and unambiguous. Accordingly, our review is plenary, and our analysis is limited to the express language of the documents and the parties' intent as expressed therein.

The trial court improperly concluded that the stipulation modified the defendant's obligations to pay reasonable and necessary expenses pursuant to article 6. "A contract must be construed to effectuate the intent of the parties . . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage . . . ." (Internal quotation marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008). It is evident from the plain language of the stipulation that it refers solely to article 5.1 of the separation agreement. First, the stipulation states specifically that it is modifying "child support," which has been set forth as a separate obligation under article 5.1. Additionally, the stipulation refers to the defendant's obligation to pay child support and alimony commensurate with his earnings, which corresponding provisions are set forth solely in article 5.1. Furthermore, article 6 of the agreement makes no mention of child support payable pursuant to that section but, instead, specifically states that the defendant must pay the reasonable and necessary expenses of the family *in lieu of support.* "It is

hornbook law that courts do not rewrite contracts for parties. . . . [A] court simply cannot disregard the words used by the parties or revise, add to, or create a new agreement." (Citation omitted; internal quotation marks omitted.) *Nassra* v. *Nassra,* 139 Conn. App. 661, 669, 56 A.3d 970 (2012). Accordingly, we conclude that the May 9, 2011 stipulation modified only article 5.1 of the separation agreement.

We further conclude that the stipulation modified article 5.1 only to the extent that it accelerated the time at which the defendant's child support obligations began.[3] Because the commencement of child support payments was conditioned on the sale of the home, the defendant's child support obligations were nonexistent at the time the stipulation was executed. Although the marital home remained unsold, the stipulation modified *present* child support immediately increasing the defendant's payments from zero to a flat rate of $150 per week. Accordingly, the defendant became obligated to pay child support at the rate set forth in the stipulation before the marital home was sold.

By virtue of the plain language in the stipulation, it cannot be construed to exclude any of the obligations in the separation agreement. The stipulation does not purport to modify the remaining support provisions of article 5.1, which provide for *future* support and alimony, payable at a rate commensurate with the defendant's earnings, after the sale of the marital home.

---

[3] In so concluding, we note that this modification applies solely to the defendant's child support obligations and is permissible pursuant to the separation agreement. Although article 5.1 enumerates an unallocated support payment schedule for alimony and child support, article 5.6 specifically provides that alimony "is *non-modifiable* as to term and amount." No similar restrictions are placed on the modification of child support, and article 22 specifically provides that the parties may modify any provisions of the agreement if made in writing and formally executed. We further observe that the parties agreed during the May 9, 2011 hearing that the stipulation did not modify alimony.

Indeed, the stipulation modified only the defendant's *present* support obligations. The child support obligation set forth in the stipulation will therefore be replaced by the support schedule enumerated in article 5.1 upon the sale of the former marital home. See *Honulik* v. *Greenwich*, 293 Conn. 698, 711, 980 A.2d 880 (2009) (basic principles of construction militate against interpreting contract in such manner to render provisions superfluous).

Likewise, the stipulation contains no language purporting to supersede, waive, or otherwise extinguish the defendant's obligations to pay reasonable and necessary household expenses pursuant to article 6.[4] In light of our well established principles of contract interpretation, we cannot conclude that the plaintiff intended to forfeit such a benefit, especially where the plain language of the modified agreement militates against the determination that the parties intended such an irrational result. See id. As a result, the defendant's obligation to pay child support pursuant to the May 9, 2011 stipulation and expenses pursuant to article 6 will run concurrently until the time the marital home is sold. In sum, we conclude that the stipulation modifying the separation agreement by adding an unqualified child support obligation, be replaced by the support schedule set forth in article 5.1 upon sale of the former marital home.

Because we have determined that the court erroneously construed the May 9, 2011 stipulation to modify article 6 of the separation agreement, it follows that the court failed to account for the payment of reasonable and necessary household expenses in its calculation of the total arrearage owed by the defendant. We

---

[4] The parties were free to waive the reasonable and necessary household expenses in the stipulation, but they did not. Instead, they drafted a stipulation that created a child support obligation independent of any conditions.

disagree with the trial court's previous arrearage calculation to the extent that it did not account for the defendant's obligation to pay reasonable and necessary expenses in the amount of $3408 per week during the period of May 9, 2011, through May 7, 2012.[5] On the basis of the record, we calculate that the defendant's total net arrearage is $502,694.

## II

The plaintiff also claims that the court abused its discretion in ruling on the motion for contempt by failing to enter an order designating the reasonable and necessary household expenses as a fixed weekly payment in the amount of $3408, failing to award the entire amount of attorney's fees requested by the plaintiff, and failing to enter an arrearage order pursuant to the child support arrearage guidelines. It is well settled that "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) *Guaragno* v. *Guaragno*, 141 Conn. App. 337, 344–45, 61 A.3d 1119 (2013). In this case, the trial court's conclusions with respect to the aforementioned issues were premised on an erroneous construction of the stipulation. Accordingly, the court has not yet exercised its discretion with respect to these issues in light of this court's construction of the stipulation. "[F]inancial orders in dissolution proceedings

[5] The trial court concluded that the defendant owed the plaintiff a total net arrearage of $315,928, which consisted of the following: $310,128 for household expenses under article 6, consisting of $3408 per week accrued during the period of August 7, 2009, to May 9, 2011; $7800 consisting of $150 per week pursuant to the May 9, 2011 stipulation accrued during the period of May 9, 2011 to May 7, 2012; attorney's fees in the amount of $10,000; and $12,000 paid by the defendant to the plaintiff, which was subtracted from the foregoing amounts. Additionally, $7200 for attorney's fees and $2350 for unreimbursed medical expenses were awarded earlier as part of the motion for contempt.

have been characterized as resembling a mosaic, in which all the various financial components are carefully interwoven with one another." (Internal quotation marks omitted.) *Brooks* v. *Brooks*, 121 Conn. App. 659, 672, 997 A.2d 504 (2010).

In light of the considerably increased arrearage, which now consists partially of a child support component, it is uncertain whether the court's previous financial orders on the motion for contempt will remain intact after reconsidering the aforementioned issues consistent with this opinion. See General Statutes § 46b-215b; Regs., Conn. State Agencies § 46b-215a-4a; see also *Kavanah* v. *Kavanah*, 142 Conn. App. 775, 780, 66 A.3d 922 (2013) (child support guidelines must be considered in all determinations of child support awards and arrearages). Accordingly, the trial judge who is designated to hear this matter must necessarily consider the following issues on remand: whether to enter a payment order designating the expenses payable pursuant to article 6 of the agreement as a fixed amount of $3408 per week until the time the marital home is sold; whether to enter a weekly payment order for the past due arrearage; what relief should be awarded pursuant to the motion for contempt, including the amount of attorney's fees to be awarded to the plaintiff; and to what extent should the child support guidelines apply to the total arrearage order. See *Gagne* v. *Vaccaro*, 133 Conn. App. 431, 439, 35 A.3d 380, cert. granted, 304 Conn. 907, 39 A.3d 1118 (2012) (different judge should have presided over case remanded for hearing on motions for attorney's fees and contempt); see also General Statutes § 51-183c.[6]

---

[6] We note that our Supreme Court has granted the plaintiff's petition for certification to appeal in *Gagne* v. *Vaccaro*, supra, 304 Conn. 907, limited to the issue: "Did the Appellate Court properly conclude that General Statutes § 51-183c required the trial court to recuse itself from presiding over the hearing on the plaintiff's motion for attorney's fees?" (Internal quotation marks omitted.)

The judgment is reversed with respect to the court's interpretation of the May 9, 2011 stipulation and its support arrearage, and the case is remanded with direction to hold further proceedings on the motion for contempt consistent with this opinion and to enter a total arrearage award of $502,694, consistent with this opinion, and any other expenses the court deems appropriate pursuant to its further proceedings on remand. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.