******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MELISSA CHANG *v.* DAVID CHANG
(AC 38201)

Alvord, Keller and Gruendel, Js.

*Argued December 6, 2016—officially released February 21, 2017*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Pinkus, J.)

*Kenneth J. Bartschi*, with whom was *Karen L. Dowd*,
for the appellant (defendant).

*Gary I. Cohen*, with whom, on the brief, was *Yakov
Pyetranker*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendant, David Chang, appeals from the financial orders entered in connection with the judgment rendered by the trial court dissolving his marriage to the plaintiff, Melissa Chang. On appeal, the defendant claims that the court improperly (1) determined that the premarital agreement between the parties was unenforceable because his disclosure of certain assets was inadequate, and (2) concluded that it could award alimony and divide certain solely owned assets even if the premarital agreement was enforceable. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendant's appeal. The court dissolved the parties' eleven year marriage on June 15, 2015. At the time of the dissolution, the parties had two minor children, ages ten and five. Following a seven day trial, the court made the following findings in its memorandum of decision: (1) neither party was more responsible for the breakdown of the marriage; (2) the parties signed a premarital agreement approximately ten days prior to their marriage; (3) the plaintiff, who has a Ph.D. in psychology, was earning approximately $50,000 a year at the time their first child was born; (4) the plaintiff stopped working altogether after their second child was born with a neuromuscular disorder; (5) the defendant has a masters degree in computer science and is employed as a trader and portfolio manager; and (6) the defendant earned approximately $600,000 at the time of the marriage and $1,644,000 in 2013.

At trial, the defendant claimed that the parties' 2003 premarital agreement was enforceable, and that the terms of that agreement provided that all of the assets in his name only, whether accumulated before or during the marriage, belonged to him and could not be awarded to the plaintiff. Additionally, he claimed that the agreement precluded an award of alimony to the plaintiff. The plaintiff claimed that the agreement was invalid and unenforceable, and she sought an equitable division of all of the marital assets as well as an award of alimony.[1]

The court determined that the parties' premarital agreement was unenforceable. In its memorandum of decision, the court referred to the written financial disclosures appended to the premarital agreement, the financial affidavits that the parties had prepared at that time, and the testimony of the plaintiff's expert, who testified at trial as to the value of the defendant's interests in certain family partnerships and corporations at the time of the execution of the agreement. The defendant had not listed a value for the family entities in his 2003 financial affidavit, claiming that they were "too difficult or speculative to value."[2] The court determined that the defendant's claim was "incorrect," and, accord-

ingly, it concluded that the defendant "failed to meet his burden to inform and the premarital agreement [was] unenforceable."

The court then considered the assets in the marital estate, together with the applicable statutory factors enumerated in General Statutes §§ 46b-81 and 46b-82, and entered several financial orders. In addition to awarding the plaintiff alimony for eight years, the court awarded her a lump sum property settlement and interests in various bank accounts, stocks, bonds, and mutual funds. Significantly, in a footnote in its decision, the court made the following observation: "The court finds no express provision in the premarital agreement that would prevent spousal support. The court finds that the definition of separate property in the premarital agreement does not include accounts solely in the defendant's name which were not listed on schedule A of the premarital agreement unless received by bequest, devise, descent, or distribution by other instrument upon death or by gift or were property acquired in exchange for the property listed on schedule A. *Accordingly, the orders in this decision would be the same even if it found the premarital agreement to be valid.*" (Emphasis added.)

The defendant filed a motion for reargument, requesting that the court reconsider its determination that the premarital agreement was invalid. Additionally, the defendant argued that the orders in the decision would not be the same if the court had determined that the premarital agreement was valid because the agreement did not provide for alimony and it did not provide for awarding the plaintiff any interest in the accounts held solely in the defendant's name. The court denied the defendant's motion without discussion. This appeal followed.

The defendant argues that the court improperly determined that the premarital agreement was unenforceable because his disclosure of his interests in certain family partnerships and corporations was inadequate.[3] We agree with the trial court's statement that the financial orders in this dissolution action would have been permissible even if the premarital agreement had been determined to be enforceable. That is, the agreement did not preclude awarding the plaintiff alimony or interests in the assets acquired during the marriage, even if held solely in the defendant's name. Accordingly, we need not determine whether the defendant's disclosure with respect to his interests in the family partnerships and corporations was inadequate, which would render the marital agreement unenforceable.

"[A]n antenuptial agreement is a type of contract and must, therefore, comply with ordinary principles of contract law. . . . [A]ntenuptial agreements are to be construed according to the principles of construction applicable to contracts generally. . . . [A]ntenuptial

agreements relating to the property of the parties, and more specifically, to the rights of the parties to that property upon the dissolution of the marriage, are generally enforceable . . . [if] the circumstances of the parties at the time the marriage is dissolved are not so beyond the contemplation of the parties at the time the contract was entered into as to cause its enforcement to work injustice. . . . [T]he party seeking to challenge the enforceability of the antenuptial contract bears a heavy burden. . . . This heavy burden comports with the well settled general principle that [c]ourts of law must allow parties to make their own contracts. . . . It is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree. . . . Whether provident or improvident, an agreement moved on calculated considerations is entitled to the sanction of the law . . . ." (Internal quotation marks omitted.) *Beyor* v. *Beyor*, 158 Conn. App. 752, 757, 121 A.3d 734, cert. denied, 319 Conn. 933, 125 A.3d 206 (2015).

"A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . .

"Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. . . . If a contract is unambiguous within its four corners, intent of the parties is a question of law requiring plenary review. . . . When the language of a contract is ambiguous, the determination of the parties' intent is a question of fact, and the trial court's interpretation is subject to reversal on appeal only if it is clearly erroneous." (Internal quotation marks omitted.) *Lisko* v. *Lisko*, 158 Conn. App. 734, 738–39, 121 A.3d 722 (2015). "It is hornbook law that courts do not rewrite contracts for parties. . . . [A] court simply cannot disregard the words used by the parties or revise, add to, or create a new agreement." (Internal quotation marks omitted.) *Hammond* v. *Hammond*, 145 Conn. App. 607, 612–13, 76 A.3d 688 (2013).

In the present case, the defendant challenges the court's award of alimony to the plaintiff and its division of certain marital assets between the parties that had been held solely in the defendant's name. Specifically, the defendant claims that "[t]he agreement does not expressly provide whether or not the court would have authority to order alimony," which precluded such an award because "[t]he parties expressly agreed not to seek relief that was not set forth in the agreement."

The defendant argues that "it was not necessary for the agreement to use talismanic language such as 'the parties waive alimony' to preclude an alimony award."

With respect to his claim regarding solely held assets, the defendant specifically challenges the awards to the plaintiff referenced in paragraph 17 of the financial orders in the memorandum of decision. In paragraph 17, the court ordered that six designated bank accounts be "divided equally by the parties resulting in a payment of not less than $1,267,775 to the plaintiff." The defendant argues that those accounts, which were held solely in the defendant's name, were not subject to division because "the agreement provides for the division of joint property, which is defined as jointly held property. That definition necessarily precludes solely held assets and therefore the parties were enjoined from asking the court to divide such assets." According to the defendant, the money deposited in those accounts, even though earned during the marriage and not listed as premarital assets in the agreement, belonged solely to him.

In claiming that alimony is precluded under the terms of the premarital agreement, the defendant relies on the following provisions to support his claims. One of the twelve "whereas" clauses provides: "WHEREAS, both parties wish to protect their respective property, estate and *income* from any claims by the other that may arise under the laws of any state or country by virtue of their forthcoming marriage . . . ."[4] (Emphasis added.) Additionally, the defendant argues that paragraph 5.13 of the agreement clearly expresses the parties' intent that an award of alimony would be prohibited if the parties divorced. Paragraph 5.13 provides: "This Agreement, in the event of a proceeding for dissolution of marriage, divorce or legal separation of the parties' marriage, shall be submitted to the court. The parties will request said court to incorporate the terms of this Agreement *pertaining to property division* in the decree. Notwithstanding the same, this Agreement shall not be merged within a decree but shall survive the same and be binding on the parties for all time. Both parties shall be estopped from requesting the court for orders different from or inconsistent with the terms of this Agreement. Both parties expressly will agree to be enjoined (including ex parte injunction) from requesting any relief except as set forth within this Agreement." (Emphasis added.)

Because the premarital agreement does not expressly provide that alimony may be awarded in their dissolution action, the defendant argues that those provisions in paragraph 5 must be interpreted to mean that it is prohibited. In other words, although the parties have not incorporated the simple phrase "the parties waive alimony" into the premarital agreement, the other provisions in the agreement, when read in combination, evi-

dence the fact that they have abandoned all claims to alimony. The plaintiff responds that the defendant is attempting to have "an alimony waiver read into the agreement." She argues that such a waiver should not be inferred when the agreement "is silent as to an affirmative statutory right." We agree with the plaintiff.

We conclude that the court properly construed the premarital agreement as not precluding the award of alimony to the plaintiff. There is no provision in the agreement that even tangentially governs the parties' rights to alimony upon the dissolution of the marriage. In order for the plaintiff to assent to the waiver of such a right, she would have to be aware that, by signing the premarital agreement, she was relinquishing all claims to alimony in the event of a dissolution of the marriage.[5] "[A] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. An effective waiver presupposes full knowledge of the right or privilege allegedly [being] waived and some act done designedly or knowingly to relinquish it. . . . Moreover, the waiver must be accomplished with sufficient awareness of the relevant circumstances and likely consequences." (Internal quotation marks omitted.) *Perricone* v. *Perricone*, 292 Conn. 187, 207, 972 A.2d 666 (2009).[6]

In the absence of a clear and unequivocal waiver of alimony in the premarital agreement, we decline to infer a knowing and voluntary waiver on the basis of the language contained in paragraph 5.13 of that agreement. Not only is the word alimony *conspicuously absent* from that paragraph, but we also note that such paragraph states that its terms are to be incorporated into and pertain to any "property division" in the decree of dissolution. We will not impute knowledge to the plaintiff that she was aware that she was relinquishing all rights to alimony on the basis of the language in paragraph 5.13 in the absence of any provisions directed to alimony awards in the premarital agreement.

We next address the defendant's claim that the agreement precluded the court from awarding the plaintiff any interests in certain bank accounts held solely in the defendant's name, i.e., the six bank accounts listed in paragraph 17 of the court's financial orders. The defendant points to paragraphs 2.1, 2.3, 3.1, 3.2, 3.3, and 5.13 of the premarital agreement as being supportive of his argument that only interests in joint property could be awarded to the plaintiff. Paragraph 2.1 provides in relevant part that "[t]he parties do hereby acknowledge and represent to each other that there may be jointly held property which they will acquire together during the course of their marriage. This would include all sums deposited into any *bank accounts in their joint names* as well as any substitutions thereof, or increments thereto. . . ." (Emphasis added.) Paragraph 2.3 provides that "[i]n the event the parties' mar-

riage ends in divorce, dissolution of marriage, annulment or legal separation, the joint property shall be divided as determined by mutual agreement or by order of a court of competent jurisdiction." Paragraph 3.1 provides: "In the event that either party hereto shall at any time subsequent to the parties' marriage, file an action in court for divorce, dissolution of marriage, annulment or legal separation (hereinafter 'an action' or 'the action'), the parties hereto waive, discharge and release any and all claims, demands, rights and interests to which they may be entitled in connection with 'the action' with respect to an interest in the Separate Property of the other party as defined herein." Paragraphs 3.2 and 3.3 provide exceptions to paragraph 3.1, addressing the marital residence of the parties and a tax free lump sum payment to the plaintiff. Paragraph 5.13, as previously quoted, states that the parties agree to refrain from requesting any relief other than that provided for in the agreement.

The plaintiff responds that the premarital agreement does not expressly address how assets acquired after the marriage and held solely in the name of one party are to be divided. The agreement does, however, define separate property, as distinguished from joint property, in paragraph 1.1. Paragraph 1.1 provides in relevant part: "The following shall constitute and remain the Separate Property of the respective parties: (a) The property listed in Schedule A ([defendant's] Financial Affidavit), and Schedule B ([plaintiff's] Financial Affidavit); (b) Property acquired at any time after the date of Schedules A and B of this Agreement, if acquired by bequest, devise, descent, distribution by other instruments upon death, or by gift . . . (f) Property acquired in exchange for such property and income identified in this paragraph 1.1, the proceeds of sale thereof and property acquired with such proceeds or with other Separate Property."

As previously stated, the defendant deposited income that he earned during the marriage into the bank accounts designated in paragraph 17 of the court's financial orders. Because those accounts were held solely in his name, he claims that they constitute "separate property" under the terms of the premarital agreement. He argues that if the court had found the premarital agreement to be enforceable, the court would have been prohibited from awarding any interest in that "separate property" to the plaintiff. We disagree.

As previously stated, the court addressed this claim of the defendant in footnote 1 of its memorandum of decision: "The court finds that the definition of separate property in the premarital agreement does not include accounts solely in the defendant's name which were not listed on schedule A of the premarital agreement unless received by bequest, devise, descent, or distribution by other instrument upon death or by gift or were

property acquired in exchange for the property listed on schedule A." Significantly, the defendant does not dispute that the challenged bank accounts consist of income that he earned during the marriage. Further, he makes no claim that those assets were acquired prior to the marriage and were listed on his financial affidavit's schedule A that was attached to the premarital agreement. We therefore conclude that the court properly determined that there were no provisions in the premarital agreement that would have precluded it from equitably dividing those bank account assets as part of the marital estate and that its financial orders would have been the same even if the court had determined that the agreement was enforceable.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties agreed that the defendant's child support obligation, pursuant to the guidelines, was $636 per week.

[2] In Paragraph 5.1 of the premarital agreement, the defendant did acknowledge that the family entities could be of significant value and could have significant future value potentially in excess of several million dollars.

[3] Premarital agreements entered into on or after October 1, 1995, are governed by the Connecticut Premarital Agreement Act, General Statutes § 46b-36a et seq. Section 46b-36g (a) provides in relevant part: "A premarital agreement or amendment shall not be enforceable if the party against whom enforcement is sought proves that . . . (3) [b]efore execution of the agreement, such party was not provided a fair and reasonable disclosure of the amount, character and value of property, financial obligations and income of the other party . . . ." See *Beyor* v. *Beyor*, 158 Conn. App. 752, 757, 762, 121 A.3d 734, cert. denied, 319 Conn. 933, 125 A.3d 206 (2015).

[4] "As a general rule, [r]ecitals in a contract, such as whereas clauses, are merely explanations of the circumstances surrounding the execution of the contract, and are not binding obligations unless referred to in the operative provisions of the contract." (Internal quotation marks omitted.) *Tomey Realty Co.* v. *Bozzuto's, Inc.*, 168 Conn. App. 637, 653 n.10, 147 A.3d 166 (2016).

[5] "[I]f alimony is not awarded in a final dissolution decree, it cannot be awarded in the future based on changed circumstances." *Passamano* v. *Passamano*, 228 Conn. 85, 90 n.7, 634 A.2d 891 (1993).

[6] Black's Law Dictionary defines waiver as "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage . . . . The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." Black's Law Dictionary (7th Ed. 1999).