# PHILIP QUARANTA ET AL. *v.*
# WILLIAM COOLEY ET AL.
## (AC 31355)

Lavine, Beach and McDonald, Js.

Argued April 13—officially released August 30, 2011

*Nicholas J. Adamucci,* for the appellant (defendant Joanne Cooley).

*Daniel K. Readyoff,* for the appellees (plaintiffs).

*Opinion*

BEACH, J. The defendant Joanne Cooley[1] appeals from an order of the trial court imposing sanctions in favor of the plaintiffs, Philip Quaranta and Arlene Quaranta, after finding the defendant in contempt. On appeal, the defendant claims that the court (1) abused its discretion by imposing punitive sanctions for a civil contempt and (2) violated her right to due process by failing to afford her a hearing prior to imposing certain sanctions.[2] We agree with the defendant and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. The parties reside on adjacent parcels of land and share a common driveway. The quarreling between the parties began when the defendant sent a letter to the plaintiffs alleging that there was a possible dispute regarding their property lines. The animosity between the parties increased between 2000 and 2005, when the defendant's son, Sean Cooley, hosted large parties approximately

---

[1] William Cooley also was named as a defendant in this action. He did not participate in this appeal, however, nor was he directly involved with many of the underlying circumstances of this case. Therefore, Joanne Cooley will be referred to individually as the defendant.

[2] The defendant also claims that the court abused its discretion by ordering her to pay compensatory damages without sufficient evidence that the plaintiffs suffered an actual loss. Discussion of this claim is rendered unnecessary by our resolution of the defendant's second claim, and, thus, we do not address it.

four times per month. At these parties, Sean Cooley's friends frequently parked numerous cars on the shared driveway. The plaintiffs complained that they often were disturbed by the screaming and cursing of Sean Cooley's friends as they left the parties late at night and by the noise from the vehicles as they left the driveway. Alcohol was served at the parties, and the plaintiffs often cleaned up empty alcohol bottles the following mornings. At one party in particular, several of Sean Cooley's friends cursed at Arlene Quaranta after she asked them to quiet down.

These unfortunate occurrences were not limited to Sean Cooley's parties. The defendant and her daughter drove at high speeds over the well kept lawn area surrounding the shared driveway and left unsightly tire tracks. The defendant also sped down the driveway while making rude hand gestures and sounding her car horn during the time it took to travel the entire length of the driveway. The defendant often left her trash out all week long even though trash was picked up only on Mondays. Animals thus got into the trash, and the plaintiffs often cleaned up the resulting mess. Multiple verbal confrontations also had occurred between the parties, one in which Sean Cooley said to Philip Quaranta: "Hit me! I'll wipe the ground up with you."

On June 14, 2005, the plaintiffs served a complaint sounding in negligent infliction of emotional distress and intentional infliction of emotional distress. In their claims for relief, the plaintiffs sought punitive damages, reasonable attorney's fees, compensatory damages for the cost of maintaining the shared driveway and such "other relief as the court deems fair, just, and equitable."

The case was tried before the court. The court issued its memorandum of decision on December 3, 2007. It credited the testimony of the plaintiffs. The court concluded that the defendant "directly and indirectly negligently and intentionally caused severe emotional

distress upon the plaintiffs . . . ." The court also concluded that "the defendant and her family have clearly exceeded the use of the right-of-way . . . ." As a result, the court imposed the following orders upon the defendant and her family: "(1) Drive your vehicles only on the paved or graveled portion of the right-of-way. (2) Do not drive your vehicles more than ten miles per hour on the right-of-way. (3) Do not blow your horn on your vehicles or play loud music while on the right-of-way. (4) Do not make obscene gestures on the right-of-way. (5) Do not park on the right-of-way or allow any of your guests to do so. (6) Remove any storage containers from the right-of-way. . . . (8) . . . [R]efuse is to be [put out] *only* on the day before trash pickup." (Emphasis in original.)

The plaintiffs filed three separate motions for contempt on February 11, March 10 and April 4, 2008. In these motions, the plaintiffs alleged that the defendant continually had violated the orders of the court set forth in its December 3, 2007 memorandum of decision and, therefore, that she was in contempt of court. The court held an evidentiary hearing on May 7, 2008, to consider all three of the plaintiffs' motions for contempt. At the hearing, the plaintiffs presented evidence showing that the defendant, her daughter and Sean Cooley had violated the court's December 3, 2007 orders on numerous occasions. Specifically, the plaintiffs offered thirteen video recordings[3] of the defendant driving on the well kept lawn area surrounding the shared driveway and forty-five video recordings of the defendant, her daughter and Sean Cooley driving in excess of twenty miles per hour on the shared driveway. The plaintiffs also provided photographs that showed that the defendant

---

[3] The plaintiffs installed three security cameras along the driveway after the court issued its December 3, 2007 memorandum of decision in order to document any claimed violations of the court's orders.

had left her garbage and recycling bins out in the driveway in violation of the court's orders. Additionally, the defendant herself admitted to driving over the well kept lawn area surrounding the driveway and to traveling over the driveway in excess of ten miles per hour.

Following the hearing, the court issued an order on May 7, 2008, which stated in relevant part: "The court finds that the defendant . . . has committed civil and direct contempt by clear and convincing evidence . . . . [The] [d]efendant is sentenced to the custody of the commissioner of correction. She can purge herself by curing the remaining objections. Execution of sentence is stayed for one month. If during that one month there is a single episode, the stay will be lifted and the [d]efendant shall be incarcerated. If the [c]ourt receives a letter from [the plaintiffs'] [c]ounsel . . . on June 9, 2008, stating that all the objections have been dealt with, the imposition of imprisonment shall be erased. The contempt finding shall remain."

On June 9, 2008, the plaintiffs filed another motion for contempt[4] alleging that the defendant had committed "an additional sixty-five separate violations" of the court's December 3, 2007 orders since the court issued its May 7, 2008 order. On August 6, 2008, the plaintiffs filed a "motion for order" seeking, inter alia: "(1) An order that the defendant . . . pay a monetary penalty for each of the seventy-two violations established at the May 7, 2008 hearing; (2) [a]n order that the defendant pay one-half of the cost to repave and regravel the common driveway [and] . . . (3) [a]n order that the defendant reimburse the plaintiffs for the attorney's fees and costs . . . incurred since . . . February 22, 2008, to enforce the [c]ourt's [December 3, 2007] orders . . . ."[5]

[4] The record does not indicate that the court acted on this motion.

[5] The plaintiffs specified in the motion for order that they were "not seeking another hearing with this motion to prove the new . . . [alleged] violations. Instead, they are merely asking the [c]ourt to enter orders consis-

Without holding a hearing, the court granted the plaintiffs' motion for order on July 13, 2009, and ordered: "(1) That the defendant . . . pay to the plaintiffs the amount of [$100] for each of the violations of the [c]ourt's orders presented at the May 7, 2008 hearing[6] on the plaintiffs' [m]otion for [c]ontempt; (2) [t]hat the defendant . . . pay one-half of the sum of the estimate obtained by the plaintiffs for the repaving and re-graveling of the parties' common driveway, in order to maintain the driveway as it is presently configured; (3) [t]hat the defendant . . . pay all outstanding fees to the plaintiffs as an award of counsel fees and costs incurred by the plaintiffs since February 22, 2008." The defendant subsequently filed a motion to reargue, which the court denied. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court abused its discretion by imposing punitive sanctions. Specifically, the defendant argues that the $100 penalties imposed by the court in its July 13, 2009 order were erroneous "because the monetary fines . . . were wholly punitive" in nature. We agree with the defendant that the court abused its discretion by imposing the $100 penalties.

We begin by setting forth our standard of review and relevant legal principles. "A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute

tent with the facts that the [c]ourt . . . already found" in its May 7, 2008 order.

[6] The plaintiffs allege that seventy-two violations were proven at the hearing so that the monetary penalty totaled $7200.

contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *O'Connell* v. *O'Connell*, 101 Conn. App. 516, 521, 922 A.2d 293 (2007).

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Contempts of court may also be classified as either direct or indirect, the test being whether the contempt is offered within or outside the presence of the court." (Citation omitted; internal quotation marks omitted.) *Edmond* v. *Foisey*, 111 Conn. App. 760, 769, 961 A.2d 441 (2008). In the present case, the plaintiffs alleged in their motions for contempt that the defendant's contemptuous behavior was her habitual failure to comply with the court's December 3, 2007 orders. Because this occurred outside the presence of the court, it was an indirect contempt, notwithstanding the court's characterization of it as "direct contempt." See *LaMacchia* v. *Chilinsky*, 85 Conn. App. 1, 4, 856 A.2d 459, cert. denied, 271 Conn. 942, 861 A.2d 514 (2004).

Contempt is either civil or criminal in nature. *Johnson* v. *Johnson*, 111 Conn. App. 413, 420, 959 A.2d 637 (2008). "[C]riminal contempt is conduct that is directed against the dignity and authority of the court. In contrast, civil contempt is conduct directed against the rights of the opposing party. A contempt is considered civil when the punishment is wholly remedial, serves only the purposes of the complainant, and is not intended as a deterrent to offenses against the public. . . . In distinguishing between the two, much weight has been placed

on the character and purpose of the punishment. Sanctions for civil contempt may be either a fine or imprisonment; the fine may be remedial or it may be the means of coercing compliance with the court's order and compensating the complainant for losses sustained. . . . In criminal contempt the sanction is punitive in order to vindicate the authority of the court." (Citations omitted.) *Board of Education* v. *Shelton Education Assn.*, 173 Conn. 81, 85, 376 A.2d 1080 (1977). In its memorandum of decision, the court determined that the defendant's contempt was civil. All parties agree as to the civil nature of the contempt.

The defendant argues that the court abused its discretion by imposing the $100 penalties because they "were not properly employed . . . [either to] coerce [her] compliance or to compensate the [plaintiffs] for losses sustained;" rather, they were "strictly punitive." The defendant maintains that because she was found to be in civil contempt, such punitive sanctions are impermissible. See *Edmond* v. *Foisey*, supra, 111 Conn. App. 775 ("[p]unitive sanctions are not permissible for civil contempt"). The plaintiffs contend that "[b]y ordering a relatively small financial penalty of $100 for each violation, the . . . court was encouraging compliance with the order because the order required the defendant to experience a consequence for her misconduct, and it provided a measure for the possible future consequence of violating the order." As a result, the plaintiffs argue that the $100 penalties were proper because they tended to coerce the defendant's compliance with the court's December 3, 2007 orders. We agree with the defendant.

It is well established that "[c]ivil contempt is designed to compel future compliance"; *Monsam* v. *Dearington*, 82 Conn. App. 451, 456, 844 A.2d 927 (2004); or to compensate a party for losses or damages caused by a violation of the court's orders. *Gina M. G.* v. *William*

*C.*, 77 Conn. App. 582, 594, 823 A.2d 1274 (2003). Thus, in the compliance category of civil contempt, it follows that "the punishment must be *conditional and coercive*, and may not be absolute." (Emphasis added.) *Mays* v. *Mays*, 193 Conn. 261, 266, 476 A.2d 562 (1984). The court's July 13, 2009 order imposing $100 penalties on the defendant was neither conditional nor coercive because the penalties were not prospective in nature; rather, they were imposed for violations of the court's orders that *already* had occurred.[7] Moreover, the order did not provide the defendant with a warning that *if* her contemptuous behavior continued, *then* she would be subject to penalties. In fact, the first time the defendant had become aware of the fact that her contemptuous behavior could result in the imposition of monetary penalties was after the penalties already had been imposed upon her by the court. As such, the court's order failed to provide the defendant with an opportunity to purge herself. As our Supreme Court previously has stated: "[I]n civil contempt proceedings, the contemnor must be in a position to purge himself. . . . Otherwise the sanction imposed would cease to be remedial and coercive but would become wholly punitive in actual operation." (Citations omitted; internal quotation marks omitted.) *Mays* v. *Mays*, supra, 266. Therefore, because the monetary penalties were not conditional or coercive,[8] they were not proper sanctions to impose upon the defendant for civil contempt. Accordingly, we conclude that the court abused its discretion by imposing the $100 penalties.[9]

---

[7] The court, in 2009, ordered the defendant to pay a penalty of $100 "for each of the violations of the [c]ourt's [December 3, 2007] orders presented at the May 7, 2008 hearing on the plaintiffs' [m]otion for [c]ontempt . . . ."

[8] The plaintiffs do not argue that the $100 penalties were intended to be compensatory or remedial.

[9] The plaintiffs also claim that this court's decision in *Southington* v. *De Mello*, 10 Conn. App. 581, 524 A.2d 1151 (1987), supports a determination that the trial court's imposition of the $100 penalties was not an abuse of discretion. Specifically, the plaintiffs contend that in *Southington*, this court "was faced with a . . . similar fact pattern and concluded that a financial

## II

The defendant also claims that the court violated her right to due process by failing to afford her a hearing to determine the amount of attorney's fees and the cost of driveway repairs imposed upon her. Specifically, the defendant contends that "[i]n accordance with her due process rights, [she] was entitled to a . . . hearing in order to cross-examine and [to] produce evidence refuting [the] plaintiffs' alleged actual losses and the amount of the [court's July 13, 2009] financial orders." We agree.

penalty which could not be fully purged was permissible and civil." The plaintiffs argue, therefore, that the penalties at issue also were permissible. We disagree.

In *Southington*, the defendant constructed a second story addition to his home in violation of local zoning restrictions. Id., 582. On March 23, 1978, the trial court issued an order permanently enjoining the defendant "from using the second story addition for any purpose . . . ." Id., 583. On December 10, 1984, the court found the defendant in contempt of the injunction; id.; and issued an order requiring the defendant to remove the exterior staircase to the second floor and "included *conditional coercive fines* of $1000 [per] day for future violations of its orders beginning on December 14, 1984." (Emphasis added.) Id., 590. On July 8, 1985, the court found the defendant in contempt and ordered him "to pay $1000 for each of the four days . . . he was in violation of the court's orders . . . ." (Internal quotation marks omitted.) Id., 584. Additionally, the order provided that if the defendant complied with the mandates therein by a specified date, then "the fine may be reduced to $500 for each of the four days the defendant was in violation of the court's orders . . . ." (Internal quotation marks omitted.) Id. This court subsequently determined that the $1000 fines were permissible sanctions to impose for a finding of civil contempt. Id., 590.

*Southington* is readily distinguishable from the present case. As this court stated: "When the trial court found the defendant in contempt for the third time on December 10, 1984, its order included conditional coercive fines of $1000 [per] day for future violations of its orders beginning on December 14, 1984. At that point in time, the defendant had the ability to avoid payment of the fine by complying with the terms of the injunction." Id. Unlike the defendant in *Southington*, the defendant in the present case did not have the ability to avoid payment of the penalties because they were not conditional or coercive. On the contrary, the defendant did not know that her failure to comply with the court's orders would result in the imposition of monetary penalties until after the penalties already had been imposed upon her by the court. Therefore, the monetary penalties imposed upon the defendant in *Southington* clearly were coercive and conditional, while the monetary

The following additional facts are relevant to our review of the defendant's claim. As stated previously, in their "motion for order," the plaintiffs sought both an order requiring the defendant to pay half of the cost of repaving and regraveling the shared driveway and attorney's fees incurred since February 22, 2008. The plaintiffs attached to their motion for order two exhibits: (1) two sworn affidavits in which their attorneys stated that the fees incurred on the plaintiffs' behalf since February 22, 2008, totaled $17,562.50 and (2) an estimate of the cost of repaving and regraveling the shared driveway attributable to the defendant.

The defendant filed an objection to the plaintiffs' motion for order. In her objection, the defendant requested that she be afforded, pursuant to her due process rights, "a hearing to dispute the allegations contained in the [p]laintiffs' motion for order." The court, without holding a hearing, granted the plaintiffs' motion for order and ordered the defendant to pay attorney's fees incurred by the plaintiffs since February 22, 2008, and to pay half of the cost of repaving and regraveling the shared driveway in accordance with the two exhibits submitted by the plaintiffs.

We first set forth our relevant standard of review and legal principles that guide our analysis of the defendant's claim. "[T]here are constitutional safeguards that must be satisfied in indirect contempt cases. It is beyond question that due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either

penalties in the present case are absolute. Accordingly, *Southington* does not influence our determination of this issue under the facts of this case.

by way of defense or explanation. . . . Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must set forth the alleged misconduct with particularity. . . . Whether the defendant was deprived of his due process rights is a question of law, to which we grant plenary review." (Citations omitted; internal quotation marks omitted.) *New Hartford* v. *Connecticut Resources Recovery Authority*, 291 Conn. 489, 499–500, 970 A.2d 570 (2009).

"[I]t is well settled . . . that the court may, in a proceeding for civil contempt, impose the remedial punishment of a fine payable to an aggrieved litigant as compensation for the special damages he may have sustained by reason of the contumacious conduct of the offender." (Internal quotation marks omitted.) *DeMartino* v. *Monroe Little League, Inc.*, 192 Conn. 271, 279, 471 A.2d 638 (1984). Moreover, "[o]nce a contempt has been found, [General Statutes § 52-256b (a)][10] establishes a trial court's power to sanction a noncomplying party through the award of attorney's fees." (Internal quotation marks omitted.) *Gina M. G.* v. *William C.*, supra, 77 Conn. App. 594–95. "Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion"; (internal quotation marks omitted) *Stein* v. *Horton*, 99 Conn. App. 477, 488, 914 A.2d 606 (2007); as does a court's decision whether to impose compensatory fines. See *Lord* v. *Mansfield*, 50 Conn. App. 21, 34, 717 A.2d 267, cert. denied, 247 Conn. 943, 723 A.2d 321 (1998).

In the present case, the plaintiffs' motion for order sought both attorney's fees and compensation for half

---

[10] General Statutes § 52-256b (a) provides: "When any person is found in contempt of any order or judgment of the Superior Court, the court may award to the petitioner a reasonable attorney's fee and the fees of the officer serving the contempt citation, such sums to be paid by the person found in contempt."

of the cost of repaving and regraveling the driveway. The defendant filed an objection and sought "a hearing *to dispute the allegations* contained in the [p]laintiffs' motion for order." (Emphasis added.) This court previously has held that "[g]enerally, when the exercise of the court's discretion depends on issues of fact *which are disputed*, due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses." (Emphasis added; internal quotation marks omitted.) *Esposito* v. *Esposito*, 71 Conn. App. 744, 747, 804 A.2d 846 (2002). Although the defendant sought a hearing specifically to contest factual allegations contained in the motion for order, the court did not hold a hearing; rather, the court simply accepted the plaintiffs' exhibits and ordered the defendant to pay the attorney's fees and half of the cost of repaving and regraveling the driveway in accordance with the representations made therein. The defendant thus was denied the opportunity to present, at a hearing, her own evidence regarding the extent of the plaintiffs' attorney's fees or the cost of repairing the driveway and to cross-examine as to evidence offered by the plaintiffs. Accordingly, the court erroneously entered orders without having provided the opportunity for an evidentiary hearing.

The judgment is reversed and the case is remanded for further proceedings according to law.

In this opinion the other judges concurred.