******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

JOSEPH GRASSO *v*. JOANNE GRASSO
(AC 34951)

Beach, Sheldon and Bishop, Js.

*Argued May 15—officially released September 30, 2014*

(Appeal from Superior Court, judicial district of
Fairfield, Dolan, J. [dissolution judgment]; Wolven, J.
[motion for contempt, motion for order]; Klatt, J.
[motion to open].)

*Nicholas J. Adamucci*, for the appellant (defendant).

*George J. Markley*, for the appellee (plaintiff).

*Opinion*

BEACH, J. The defendant, Joanne Grasso, appeals from the rulings of the trial court on various postdissolution motions. The defendant claims that the court erred in (1) denying her motion for contempt, (2) declining to enter an order for payments on an arrearage, and (3) denying her motion to open because of newly discovered evidence. We affirm the judgments of the trial court.

In 2005, the plaintiff, Joseph Grasso, initiated the present action and sought a dissolution of his marriage to the defendant. In December, 2006, the court rendered a judgment of dissolution.

Two companies, Crystal, LLC (Crystal), a real estate holding company, and The Original Grasso Construction, Inc. (Original Grasso), a paving and landscaping business that is headquartered on a property owned by Crystal, have roles in the factual background. Prior to the dissolution judgment, the parties jointly owned the companies. The judgment of dissolution provided that the plaintiff was entitled to sole ownership of the companies.

In its judgment of dissolution, the court ordered the plaintiff to pay alimony as follows: $22,500 per month for the period from September 1, 2006, to October 1, 2008; $17,500 per month for the period from November 1, 2008, to August 1, 2016; $10,000 per month for the period from September 1, 2016, to August 1, 2021; and alimony was to terminate with the payment due on August 1, 2021. As a result of various motions filed by both parties, the plaintiff's alimony obligation changed. On December 8, 2010, the court ordered that the plaintiff pay alimony as follows: "January 1, 2010, through April 1, the plaintiff pays $1206.64 per week. This pay period consists of 17 weeks. May 1 through August 31, the plaintiff pays $6711.29 per week. This pay period consists of 17 weeks. September 1 through December 31, the plaintiff pays $5878.15 per week. This pay period consists of 18 weeks." The court ultimately approved an order that the plaintiff pay $1500 per week in alimony.[1]

The subjects of this appeal are the court's denials of three postdissolution motions filed by the defendant. The defendant filed a postjudgment motion for contempt on March 12, 2012, arguing that the plaintiff had failed to pay alimony in the total amount of $367,000. Also on that date, the defendant filed a motion for order of arrearage payments. On August 1, 2012, the court, *Wolven*, *J.*, denied the motion for contempt on the ground that the plaintiff's failure to pay was not wilful. Because the court did not expressly rule on the motion for order of arrearage payments in its decision, the defendant filed a motion for articulation. In its articulation, the court explained that it had not entered orders regarding arrearage payments because the plaintiff did

not have the ability to pay amounts in addition to his current alimony payments. The defendant also filed a motion to open the judgment of contempt because of newly discovered evidence. The court denied that motion. This appeal followed.

I

The defendant claims that the court erred in denying her motion for contempt. She argues that the court erred in crediting the plaintiff's testimony that his only source of income was Crystal, and that he did not receive any money from Original Grasso during the time period in question. She argues that there was documentary evidence that contradicted the plaintiff's testimony regarding his income, and, therefore, that the court erred in crediting the plaintiff's testimony in that regard. We disagree.

In ruling on the defendant's March, 2012 motion for contempt, the court determined that in light of the plaintiff's income of approximately $200,000 per year, there was "no way" he could make alimony payments of $234,000 per year, and, therefore, his noncompliance had not been wilful.[2] The court credited the plaintiff's testimony that he had not derived income from Original Grasso, which had been in bankruptcy proceedings, since October, 2010. It further stated that it found credible the plaintiff's financial affidavit stating that he received $3898 per week from Crystal. The court concluded that the income from Crystal, amounting to approximately $200,000 per year, was not sufficient to enable the plaintiff to pay alimony in the amount of $234,000 per year. The court further found that although some funds derived from Original Grasso had been spent by the plaintiff's son, also an employee of Original Grasso, on gambling, there was no evidence that the funds had been obtained by the plaintiff himself.

In its articulation, the court stated that it credited the plaintiff's testimony that he had not derived income from Original Grasso since October, 2010. The court noted that the defendant's counsel had submitted checks and bank statements from Original Grasso and had cross-examined the plaintiff extensively regarding transfers and withdrawals. The court stated that the plaintiff had attributed most of the transfers and withdrawals to business expenses, such as repairing and developing a building in Norwalk owned by Crystal. The court further noted that the plaintiff could not remember the nature of the remaining transfers and withdrawals. The court did not agree with the argument of the defendant's counsel that there was any "extravagant adventure," and concluded that the defendant had not satisfied her burden of proof.

"A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or

inactions of the [alleged contemnor] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . [T]he credibility of witnesses, the findings of fact and the drawing of inferences are all within the province of the trier of fact. . . . We review the findings to determine whether they could legally and reasonably be found, thereby establishing that the trial court could reasonably have concluded as it did." (Internal quotation marks omitted.) *Quaranta* v. *Cooley*, 130 Conn. App. 835, 840–41, 26 A.3d 643 (2011).

The defendant argues that the plaintiff's testimony, which the court credited, that he had received no more than approximately $200,000 per year in income from a single source, Crystal was contradicted by a bankruptcy court document that stated, according to the defendant's interpretation of it, that the plaintiff had received additional compensation from Original Grasso of between $250,000 and $275,000 per year from December, 2009 through February, 2012. She argues that, in determining credibility, greater weight should have been accorded to the bankruptcy court document than to the plaintiff's testimony. We disagree.[3]

The bankruptcy court document at issue, which was admitted as a full exhibit at the hearing, is entitled "Third Amended Plan of Reorganization." It states in § 5.2 (c) that "[t]he Debtor shall continue to own, operate and manage [Original Grasso] consistent with and in accordance with the terms of this Plan. [The plaintiff] shall continue to own and manage the Debtor. His compensation will be consistent with that received during the Chap[ter] 11 case, approx[imately] $250,000–275,000 per year." The bankruptcy court's recitation of the plan was dated February 21, 2012.[4]

The plaintiff testified that he had not received income directly from Original Grasso since October, 2010. He further testified that the bankruptcy court had not required or ordered him to withdraw money from Original Grasso, but, rather, had permitted him to take between $250,000 and $275,000 in income per year from Original Grasso, if funds were available for that purpose. He testified, however, that he had not taken any income from Original Grasso since October, 2010. He testified that his only source of income was Crystal in the amount of $3898.46 per week.

It is within the province of the trial court, as the fact finder, to decide questions of credibility. *Rutka* v. *Meriden*, 145 Conn. App. 202, 211–12, 75 A.3d 722 (2013). We defer to the trial court in crediting the plaintiff's testimony that he received approximately $200,000 in income per year from Crystal, and that he did not receive any additional compensation from Original Grasso. The bankruptcy court document does not necessarily contradict the plaintiff's testimony in any event:

the plaintiff's interpretation was that although he had been permitted to take between $250,000 and $275,000 in income per year, he had not done so.[5]

The defendant further argues that the court erred in crediting the plaintiff's testimony that he had not taken or received income from Original Grasso since October, 2010, for another reason as well. She argues that there was evidence of "significant" cash withdrawals, "significant" money transfers, and payments for gambling and travel expenses on Original Grasso's account that contradicts the plaintiff's testimony regarding his not taking funds from Original Grasso.

Again, we defer to the trial court's factual findings. "The trier is free to accept or reject, in whole or in part, the testimony offered by either party. . . . That determination of credibility is a function of the trial court." (Citation omitted; internal quotation marks omitted.) *Heritage Square, LLC* v. *Eoanou*, 61 Conn. App. 329, 333, 764 A.2d 199 (2001). At any rate, the fact that there may have been expenses, transfers, and withdrawals from Original Grasso's account does not necessarily contradict the plaintiff's testimony that he had not received income from Original Grasso since October, 2010. As explained by the court in its articulation, the plaintiff testified at the hearing that most of the money transfers and withdrawals from Original Grasso were used to pay business expenses related to Crystal. The plaintiff had no recollection of the nature of the few remaining transfers and withdrawals.[6] The plaintiff testified that the gambling expenses were those of his adult son, an employee of Original Grasso, and that his son had paid back some of those amounts to Original Grasso.

We conclude that the court did not err in finding that the defendant had not satisfied her burden of proving that the plaintiff wilfully failed to comply with the court's alimony orders.

## II

The defendant next claims that the court erred in declining to order the plaintiff to make payments on the arrearage. We disagree.

Central to the defendant's argument is a prior ruling by the court, *Winslow, J.*, in which an amount of arrearage was found. On May 20, 2011, the court denied a motion for contempt that had been filed by the defendant on July 7, 2010. The court found that the defendant had demonstrated that there had been a substantial shortfall in the plaintiff's making of alimony payments since November, 2008. The court noted that it had made a finding at an earlier hearing on the matter that the plaintiff owed an arrearage of $201,986.95. The court further found that the plaintiff had shown a downturn in his business, which was undergoing reorganization in bankruptcy, and that his failure to pay was not wilful.

The court stated that it would not enter orders at that time as to how the arrearage was to be paid.

The defendant referenced Judge Winslow's ruling in her March 12, 2012 motion for order of arrearage payments (motion for order). In that motion, she stated that on May 20, 2011, the court had entered orders finding that the plaintiff owed $201,986.95 in alimony, but had made no orders at that time regarding the payment of that arrearage. She further argued that the plaintiff had continued to fail to pay alimony, and thus a simultaneous motion for contempt had been filed. She requested an order as to payments toward the $201,986.95 arrearage and further orders regarding the arrearage that had accrued since the time of the prior finding. When the court ruled on the motion for contempt and found the nonpayment not to be wilful, the court did not rule on the motion for order.

The defendant filed a motion for articulation of the court's ruling on her March, 2012 motion for contempt. She requested, inter alia, that the court articulate whether it had also denied her motion for order when it denied her motion for contempt, and, if it had done so, to explain the factual basis for doing so. The court articulated that there had been insufficient evidence submitted at the hearing on the motion for contempt to make a specific determination of the current amount of the arrearage, and that no order for payments toward the arrearage had been entered.

It is well settled that "[a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented." (Internal quotation marks omitted.) *Guaragno* v. *Guaragno*, 141 Conn. App. 337, 344, 61 A.3d 1119 (2013). Factual findings are reviewed under a clearly erroneous standard. *Miller* v. *Guimaraes*, 78 Conn. App. 760, 766–67, 829 A.2d 422 (2003).

The defendant argues that the court's failure to rule on the motion for order was tantamount to a denial of the motion, and such a denial was erroneous because the court at least should have ordered payments toward the $201,986.95 arrearage found by Judge Winslow on May 20, 2011. She contends that "the fact that [the arrearage] was larger at the time of the [hearing on her May, 2012 motion for contempt] didn't matter. Put simply, [she] was entitled to a ruling on the amount to be paid by the [plaintiff] toward the arrearage as found by Judge Winslow on May 20, 2011."

The court did not err in declining to enter an order regarding the $201,986.95 in arrearage as found by Judge Winslow. The court explained in its articulation that it did not enter an order requiring payments toward the arrearage contemporaneously with its denial of the May, 2012 motion for contempt because it had credited

the plaintiff's testimony that he was not able to pay more than the $1500 per week that he had been paying in alimony. The court noted that the plaintiff had "very significant personal debt," which was to increase in October, 2012, when he became liable to various debtors according to his bankruptcy plan. Failure to make required debt payments would result in the liquidation of all of the assets of Original Grasso. The court further articulated that the plaintiff was "unable to pay his court ordered alimony payment at this time. No arrearage order is entered pursuant to the motion for contempt as [the plaintiff] cannot, at this time, pay more than the $1500 per week he is currently paying the defendant. Arrearage will continue to accrue and [the plaintiff] will be responsible for paying the full amount of the court ordered alimony when he is able to do so."

In its response to the motion for articulation, the court effectively ruled on the motion for order. It explained that it had not entered an order of arrearage payments because of the plaintiff's inability to pay. The court's finding that the plaintiff was unable to pay more than $1500 per week was not clearly erroneous. The plaintiff so testified, and it was within the province of the trial court to accept his testimony. See *Quaranta* v. *Cooley*, supra, 130 Conn. App. 840–41. The court, however, did not relieve the plaintiff of his obligation to pay the arrearage at some point, and noted that the arrearage would continue to accrue. The court did not abuse its discretion in declining to enter an order requiring the plaintiff to make payments on the arrearage.

### III

The defendant last claims that the court erred in denying her motion to open. She claims that there was new evidence corroborating the plaintiff's receipt of additional income and demonstrating that he had made false representations to the court. We disagree.

On April 29, 2013, more than four months after the court's August 1, 2012 ruling on the motion for contempt, the defendant filed a motion to open "based on newly discovered evidence and fraud perpetrated on the court by the plaintiff." In that motion, the defendant argued that the plaintiff had falsely stated at the hearing on the defendant's March, 2012 motion for contempt that he had not received compensation from Original Grasso since October, 2010. She claimed that new evidence of falsity had been discovered after the hearing on her March, 2012 motion for contempt. The evidence that the defendant claimed to have been newly discovered consisted of conversations between the bankruptcy trustee and the plaintiff in 2010, transcripts of creditor meetings, and the plaintiff's 2011 and 2012 corporate operating reports from Original Grasso.

The court, *Klatt, J.*, denied the motion. It reasoned that the "[d]efendant's motion claims to be based on

newly discovered evidence regarding the plaintiff's bankruptcy proceeding. Transcripts from the hearing before Judge Wolven reveal over 125 pages of testimony from the plaintiff regarding his income. The court's . . . articulation of [its decision on the March, 2012 motion for contempt] indicated [that] there was extensive testimony regarding the plaintiff's income, his business, and the bankruptcy proceedings. The bankruptcy matter was completed before the hearing began. The defendant's motion to open evidence appears, in fact, to be nothing more than a thinly veiled attempt to reargue the facts and evidence from the hearing before Judge Wolven."

The defendant argues that the court abused its discretion in denying her motion to open. She contends that the court erred in determining that her motion was a "thinly veiled attempt to reargue" the facts at the contempt hearing, and that the newly discovered evidence demonstrated that the plaintiff falsely testified at the hearing on the May, 2012 motion for contempt as to the amount of his income. The defendant argues that the court should have granted the motion to open the contempt judgment under the fraud exception to General Statutes § 52-212a.[7]

It is well established that "[a] judgment rendered may be opened after the four month limitation [set forth in § 52-212a and Practice Book § 17-43] if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake." (Internal quotation marks omitted.) *Richards* v. *Richards*, 78 Conn. App. 734, 739, 829 A.2d 60, cert. denied, 266 Conn. 922, 835 A.2d 473 (2003).

A court may grant a motion for a new proceeding based on newly discovered evidence if the movant establishes "by a preponderance of the evidence, that: (1) the proffered evidence is newly discovered, such that it could not have been discovered earlier by the exercise of due diligence; (2) it would be material on a new [proceeding]; (3) it is not merely cumulative; and (4) it is likely to produce a different result in a new [proceeding]. . . . It is within the discretion of the trial court to determine, upon examination of all the evidence, whether the [movant] has established substantial grounds for a new [proceeding], and the judgment of the trial court will be set aside on appeal only if it reflects a clear abuse of discretion." (Internal quotation marks omitted.) *Daniels* v. *State*, 88 Conn. App. 572, 577, 870 A.2d 1109, cert. denied, 274 Conn. 902, 876 A.2d 11 (2005).

The court did not abuse its discretion in denying the motion to open. The court reasoned that the bankruptcy proceedings had concluded before the contempt hearing had begun, and the plaintiff testified extensively at the contempt hearing regarding his income, business, and the bankruptcy proceedings. The court, in essence,

reasoned that the defendant had not met her burden of proving that the evidence could not have been discovered earlier by the exercise of due diligence, and that it was largely cumulative. The defendant argues that the evidence could not have been discovered prior to August 1, 2012, because the plaintiff's testimony did not conflict with § 5.2 (c) of the bankruptcy plan until that date. As we stated in part I of this opinion, the plaintiff's testimony did not necessarily conflict with the bankruptcy plan. Rearguing the facts is not a legitimate purpose of a motion to open based on newly discovered evidence.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] The parties seem to disagree as to whether this was a temporary or more long-term solution to the plaintiff's financial situation. This, however, is not at issue in this appeal.

[2] In its decision, the court incorrectly stated that the amount due was $240,000 per year. In its articulation, the court noted that the amount due per year was $234,000. The court stated that the $6000 difference did not affect its analysis or decision.

[3] The hearing on the motion for contempt lasted two days, but the defendant has provided us with only a transcript of the proceedings of the second day, August 1, 2012. The plaintiff's testimony that the defendant claims the court erred in crediting occurred on that day.

[4] There is no indication that the bankruptcy records show any admissions by the plaintiff, nor any indication that the court's observation was necessary to the decision such that estoppel might be shown. The plaintiff indeed did not dispute that he received payments from Crystal, which in turn received payments from Original Grasso.

[5] On appeal, the defendant argues only that the plaintiff misrepresented his income by failing to include personal income received from Original Grasso. She makes no claim that Original Grasso's income was attributable to the plaintiff whether or not he took it.

[6] The defendant argues that the court erred in relying on the plaintiff's testimony that his income was properly reflected in his financial affidavit because there were cash withdrawals from Original Grasso that could have been used by the defendant personally, and therefore should have been considered as income. The court, however, credited the plaintiff's testimony that most of the money transfers and withdrawals from Original Grasso were business expenses for Crystal. The court noted in its articulation that the plaintiff had no recollection regarding the nature of some of the remaining transfers and withdrawals. The court did not err in crediting the plaintiff's testimony as to the business nature of the majority of the transfers and withdrawals. The court was not obligated as a matter of law to discredit the plaintiff's testimony as to the business nature of the majority of the transfers and withdrawals from Original Grasso or to discredit his financial affidavit due to his inability to recall the nature of some of the transfers and withdrawals from Original Grasso. Credibility assessments are the function of the finder of fact, and we defer to such assessments. *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, cert. denied, 289 Conn. 929, 958 A.2d 157 (2008).

The defendant also points to charges paid by Original Grasso for a stay at the Lodge at Mount Snow, to BMW of North America (BMW) for $1450, and to a restaurant called Coast Guard House. The plaintiff testified that the charges to the lodge and the restaurant were his, and that the charge to BMW was a gift to his daughter. The plaintiff was not asked if the charges to the lodge and restaurant were business or personal expenses. At any rate, the charges were, in context, de minimis. See id., 330 n.13 (court's denial of a motion includes "implicit findings that it resolved any credibility determinations and any conflicts in testimony in a manner that supports its ruling").

[7] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment . . . rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within

four months following the date on which it was rendered . . . .” See also
Practice Book § 17-4.

───────────────────────────────