******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

LUONGO CONSTRUCTION AND
DEVELOPMENT, LLC *v.*
JAMES MACFARLANE
(AC 38185)

DiPentima, C. J., and Lavine and Flynn, Js.

*Syllabus*

The plaintiff construction company, L Co., sought to recover damages from
the defendant, M, for, inter alia, breach of a contract for the construction
of a modular home. Thereafter, M filed a counterclaim against L Co.
and L, who was in charge of the construction, alleging, inter alia, breach
of contract, breach of the New Home Construction Contractors Act (§ 20-
417a et seq.), and violation of the Connecticut Unfair Trade Practices
Act (CUTPA) (§ 42-110a et seq.). Following a trial to the court, judgment
was rendered for M on the complaint and in part on his counterclaim,
from which L Co. and L appealed to this court. They claimed, inter alia,
that the trial court improperly denied two motions they had filed to
dismiss M's counterclaim, which were based on the prior pending action
doctrine, given that a separate action was pending in New Haven that
involved the same parties. *Held*:

1. The trial court properly denied the motions to dismiss M's counterclaim:
   this court would not presume error in the trial court's one sentence
   order denying the first motion to dismiss, which was filed by both L
   Co. and L, as the court was not required to issue a memorandum of
   decision setting forth its reasoning as to each claim of law raised in the
   motion, and because L Co. and L failed to seek an articulation of the
   order, they failed to provide this court with an adequate record on which
   to review their claim that the trial court failed to apply the proper
   analytical framework, and this court would not presume error by the
   trial court where L Co. and L failed to satisfy their burden of demonstra-
   ting that the trial court's ruling was factually or legally untenable; more-
   over, the trial court properly denied the second motion to dismiss filed
   by L Co., in which L Co. alleged, on the basis of the prior pending action
   doctrine, that M's counterclaim should be dismissed because M had a
   full opportunity to litigate the claims raised therein in the New Haven
   action but chose not to do so prior to the withdrawal of the New Haven
   action, this court having concluded previously that once a second action
   has been withdrawn, there is no action pending to implicate the prior
   pending action doctrine.

2. The trial court properly denied the motion for summary judgment filed
   by L Co., in which L Co. alleged that M's counterclaim violated the prior
   pending action doctrine, and also raised the defenses of waiver and
   equitable estoppel: the trial court having stated that it had considered
   the arguments of the parties and concluded that genuine issues of mate-
   rial fact existed that precluded the rendering of summary judgment, the
   assertion by L Co. and L that the court failed to consider their claim
   regarding the prior pending action doctrine was unavailing; furthermore,
   because the parties moving for summary judgment, L Co. and L, did not
   satisfy their burden of establishing that no genuine issue of material
   fact existed with respect to the issues of waiver and estoppel, M, as the
   nonmoving party, had no obligation to submit evidence establishing the
   existence of such an issue, and our Supreme Court having determined
   previously that a denial of a motion for summary judgment is not appeal-
   able when a full trial on the merits produces a verdict against the moving
   party, there was no reason to depart from that general rule under the
   circumstances of this case, where, after hearing all of the evidence, the
   trial court rejected the claims of waiver and estoppel raised by L Co.

3. The trial court did not abuse its discretion in awarding punitive damages
   to M pursuant to CUTPA; the record supported that court's determina-
   tion that L Co. had failed to follow the specifications of the modular
   home manufacturer and performed the crucial work of setting the foun-
   dation and beams in a shockingly poor manner, which resulted in a
   number of defects and problems with the house, and that such conduct,

coupled with the failure of L Co. to comply with the requirements of the statute (§ 20-417d) governing new home construction contractors, constituted reckless conduct, which justified an award of punitive damages under CUTPA.

(*One judge dissenting in part*)

Argued April 17—officially released September 12, 2017

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Middlesex, where the court, *Aurigemma, J.*, granted the plaintiff's application for a prejudgment remedy; thereafter, the court, *Holzberg, J.*, granted the defendant's motion to dismiss the prejudgment remedy; subsequently, the court, *Morgan, J.*, denied the defendant's motion to dismiss; thereafter, the court, *Aurigemma, J.*, sustained the defendant's objection to the plaintiff's application for a prejudgment remedy; subsequently, the court, *Marcus, J.*, granted the defendant's motion to cite in Michael Luongo as a counterclaim defendant, and the defendant filed a counterclaim; thereafter, the court, *Aurigemma, J.*, denied the motion to dismiss filed by the plaintiff and the counterclaim defendant; subsequently, the court, *Domnarski, J.*, denied the motion for summary judgment filed by the plaintiff and the counterclaim defendant, and the plaintiff and the counterclaim defendant appealed to this court, which granted the defendant's motion to dismiss the appeal; thereafter, the court, *Aurigemma, J.*, denied the defendant's motions to dismiss; subsequently, the matter was tried to the court, *Aurigemma, J.*; judgment for the defendant on the complaint and in part on the counterclaim, from which the plaintiff and the counterclaim defendant appealed to this court. *Affirmed.*

*Frank P. Cannatelli*, for the appellants (plaintiff and counterclaim defendant).

*Vincent T. McManus, Jr.*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Luongo Construction and Development, LLC (Luongo LLC), and the counterclaim defendant, Michael Luongo (Luongo), appeal from the judgment of the trial court rendered in favor of the defendant and counterclaim plaintiff, James Mac-Farlane (MacFarlane). On appeal, Luongo LLC and Luongo (Luongo parties) claim that the court improperly (1) denied their motions to dismiss, which were based on the prior pending action doctrine, (2) denied their motion for summary judgment and (3) awarded an excessive amount of punitive damages. We disagree and, accordingly, affirm the judgment of the trial court.

The following facts and procedural history are necessary to understand the history of this case, which the trial court aptly described as "unnecessarily protracted and convoluted." The proceedings originated in the Middlesex judicial district when Luongo LLC filed an application for a prejudgment remedy against MacFarlane. The court granted the application in the amount of $20,000. The prejudgment attachment was dismissed on June 29, 2012, and Luongo LLC's subsequent efforts to attach MacFarlane's property proved to be unsuccessful.

Luongo LLC commenced the present action and filed an amended complaint on August 13, 2013. It alleged that Luongo LLC and MacFarlane had entered into a contract regarding the construction of a modular home. It further claimed that Luongo LLC had performed its obligations under the contract, including the completion of the items contained on a "punch list . . . ." Luongo LLC contended that MacFarlane had failed to pay the balance of $20,000 owed under the terms of the contract.

Over the course of several months, MacFarlane cited in Luongo as a counterclaim defendant, filed an answer to the amended complaint and brought a counterclaim against the Luongo parties. In his amended counterclaim, MacFarlane alleged breach of contract, a violation of the New Home Construction Contractors Act, General Statutes § 20-417a et seq.,[1] violations of the new home express and implied warranties as set forth in General Statutes §§ 47-117, 47-118 and 47-121, a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and a violation of General Statutes § 21-86,[2] and he sought recovery from Luongo, who allegedly was personally in charge of the construction of MacFarlane's home, for negligent and unworkmanlike construction.

Following a two day trial, the court issued a memorandum of decision on June 17, 2015, and found the following facts. On November 24, 2010, MacFarlane agreed to pay Luongo LLC $247,915 in exchange for the "delivery and installation" of a modular home with a

three car garage. Luongo LLC contracted to perform the work in a substantially workmanlike manner and in accordance with the drawing and specifications provided.

MacFarlane called Steven Rocco, an expert with thirty-five years experience as an architect and twenty-five years experience as a builder, as a witness. Rocco inspected the property several times, interviewed MacFarlane, examined photographs taken during the construction, and reviewed the "site assembly handbook" provided by the modular home's manufacturer. In Rocco's opinion, the two steel beams which ran end to end down the center line of the basement had been installed in a "haphazard" manner, and this error compromised the rest of the construction of the home. Rocco further testified that because the steel beams ran uphill to the center column, there was "a very visible ridge down the center of the floor, as well as the opposing slopes of the ceiling in the [basement]. Between the high point in the center, and the exaggerated variances [on] the top of the foundation walls, the wood modular boxes above are subject to twists and turns, which causes the plethora of cracks throughout the house." (Emphasis omitted.)

The trial court stated in its memorandum of decision that Rocco "further testified that at the place where the two halves of the modular home meet, the ceiling is visibly sagging and also rotating. [He] further opined that the sagging and rotation of the beams was caused by [Luongo's] failure to bolt the beams or brace them in some other fashion. The torque created by the unbolted beams causes cracks in the house, which will continue to occur unless the beams are bolted." Rocco also indicated that, as a result of the error by Luongo LLC in placing the stairs that connected the cellar and garage, the space to park a vehicle was decreased, and thus, MacFarlane did not receive a three car garage.

Rocco also provided his opinions as to how to remedy the various problems in the home. One option was to tear down the home and have a new one installed correctly. Rocco noted a less costly alternative, but this option required, among other things, the removal of all appliances, cabinets, wiring and plumbing in the kitchen, as well as refinishing the subfloor and floor. Further, this would require that the home be vacant for thirty days.

The court rejected the claim of the Luongo parties that a check and letter sent by Amy Coppola, who lived with MacFarlane at the time, indicated MacFarlane's satisfaction with the home after the "punch list" had been completed. It further concluded that Luongo LLC had failed to perform its work in accordance with the drawings and specifications provided, as well as in a workmanlike manner. "This court finds that [Luongo LLC] has already been paid far too much for its work

and is not entitled to receive its claimed balance of $18,959. Judgment enters on the amended complaint in favor of . . . MacFarlane."

The court then found in favor of MacFarlane on his claim of breach of contract against Luongo LLC as a result of its failure to perform work in a proper, workmanlike manner. It awarded $61,938.43 in damages, which was comprised of the $6072.43 that MacFarlane had paid to repair various items and $55,866, which he will have to spend to repair the defects. The court also awarded consequential damages in the amount of $6000 for room and board costs that MacFarlane will incur during the repairs, as well as $40,000 for the diminution in value of the home even after the repairs have been made. The actual damages, therefore, awarded to MacFarlane totaled $107,938.43. This figure, however, was adjusted by the amount not paid by MacFarlane ($18,959) and the fact that MacFarlane had paid $1200 for blueprints that he never received. The final total of the actual damages awarded for the first count of the counterclaim was $90,179.43.

The court further found that, aside from providing MacFarlane with a copy of Luongo LLC's registration certificate, "[t]here was no evidence that [the Luongo parties] complied with the balance of [General Statutes] § 20-417d. Had they done so, then MacFarlane could have had some opportunity to determine something about the qualifications of [the Luongo parties] and determine whether they had ever constructed/installed a modular home before. The violation of § 20-417d is a violation of CUTPA. The fourth count of the counterclaim alleges a violation of CUTPA."

Relying on precedent from our Supreme Court, namely, *Ulbrich* v. *Groth*, 310 Conn. 375, 78 A.3d 76 (2013), the trial court noted that punitive damages and attorney's fees could be awarded, in the court's discretion, under CUTPA. In considering the propriety of these awards in the present case, the court stated: "Mere negligent workmanship might not justify an award of punitive damages. However, in this case [the Luongo parties] disregarded the modular home manufacturer's instructions and recommended installation methods. . . . The construction of the house described by . . . Rocco as 'shocking' combined with the failure to comply with . . . § 20-417d justify the conclusion that the conduct of Luongo LLC was reckless within the meaning of CUTPA, and that punitive damages should be awarded by the court." The court awarded $15,025 for expert witness fees incurred by MacFarlane, as well as reasonable attorney's fees to be determined at a later date. Additionally, it awarded $150,000 in punitive damages, which, as the court noted, was greater than 1.5 times the actual damages of $90,179.43, but less than double the actual damages.[3]

The court also found that Luongo LLC had breached

its express warranty, pursuant to § 47-117, and implied warranty, pursuant to § 47-118, but that MacFarlane failed to demonstrate a violation of § 47-121, which creates a warranty when a certificate of occupancy issues. The court then determined that MacFarlane had abandoned his claim regarding § 21-86. With respect to the sixth count of the counterclaim, the court found that Luongo was personally liable. "In this case, Luongo LLC contracted with MacFarlane, but the negligent and inept conduct of . . . Luongo created the massive defects in the house. There was substantial evidence that Luongo supervised the placing of the beams and most other aspects of the construction on the property." In conclusion, the court rendered judgment in favor of MacFarlane and against the Luongo parties in the amount of $255,204.43 plus subsequently determined attorney's fees.[4] This appeal followed. Additional facts will be set forth as needed.

I

The Luongo parties first claim that the court improperly denied their two motions to dismiss MacFarlane's counterclaim, which were based on the prior pending action doctrine. They appear to claim that the court failed to review its arguments that the counterclaim should be dismissed pursuant to the prior pending action doctrine and that this failure constituted an abuse of discretion.

The following additional facts are necessary for our resolution of this claim. After Luongo LLC filed its application for a prejudgment remedy in Middlesex judicial district, MacFarlane initiated a separate action against Luongo LLC and Apex Homes, the manufacturer of the modular home in the New Haven judicial district. In the Middletown case, MacFarlane filed a motion to dismiss on the basis of the prior pending action doctrine. Specifically, he claimed that the New Haven case had been filed first and involved the same parties and issues as the Middletown case. On December 27, 2012, the court, *Morgan*, *J.*, issued a memorandum of decision denying MacFarlane's motion. The court determined that the writ of summons and complaint were served one month earlier in the New Haven action. It further concluded that the New Haven action included a defendant, Apex Homes, Inc., that was not part of the Middletown case and that the claims asserted in each were sufficiently different. Thus, the court exercised its discretion and concluded that the prior pending action doctrine did not warrant the dismissal of the Middletown case.

In the New Haven action, MacFarlane filed a motion to cite in Luongo as a defendant. This motion was filed on December 12, 2013. Luongo LLC objected, and the court considered these matters in the context of the prior pending action doctrine. The court, *Wilson*, *J.*, issued a memorandum of decision on January 17, 2014,

noting that MacFarlane's counterclaim in the Middletown action had been served on Luongo on October 30, 2013. As Luongo had not yet been served in the New Haven action, the court determined that the Middletown action had been commenced first. It further determined that the two actions were virtually alike and, therefore, sustained the objection to MacFarlane's motion to cite in Luongo.

We now turn to the two motions to dismiss, filed by the Luongo parties in the Middletown action, that are the subject of this appeal. The Luongo parties filed the first motion to dismiss on December 23, 2013, and sought to have MacFarlane's counterclaim dismissed in its entirety. The Luongo parties argued, inter alia, that the counterclaim should be dismissed because the New Haven action was pending and it involved the same parties. MacFarlane filed his objection on January 7, 2014, arguing that the two cases were different and that Luongo had not yet been cited into the New Haven case.[5] On February 10, 2014, the court, *Aurigemma, J.*, denied the motion to dismiss with a one sentence order.

On May 12, 2015, approximately three weeks after the trial had concluded, but prior to the release of the court's decision on the merits, Luongo LLC again moved to dismiss MacFarlane's counterclaim on the basis of the prior pending action doctrine. This motion was filed more than one year after the New Haven action had been withdrawn by MacFarlane. It argued that MacFarlane had the opportunity to litigate the matters raised in the counterclaim in the New Haven action, as well as a claim that Judge Wilson's decision constituted the law of the case.[6] MacFarlane opposed this motion, arguing in part that it had been filed untimely. On June 22, 2015, Judge Aurigemma issued an order denying the motion on the ground that it should have been raised before the trial was completed.

As an initial matter, we set forth the relevant legal principles and our standard of review with respect to claims regarding the prior pending action doctrine. "[T]he prior pending action doctrine permits the court to dismiss a second case that raises issues currently pending before the court. The pendency of a prior suit of the same character, between the same parties, brought to obtain the same end or object, is, at common law, good cause for abatement. It is so, because there cannot be any reason or necessity for bringing the second, and, therefore, it must be oppressive and vexatious. This is a rule of justice and equity, generally applicable, and always, where the two suits are virtually alike, and in the same jurisdiction. . . . The policy behind the doctrine is to prevent unnecessary litigation that places a burden on crowded court dockets. . . .

"[T]he trial court must determine in the first instance whether the two actions are: (1) exactly alike, i.e., for the same matter, cause and thing, or seeking the same

remedy, and in the same jurisdiction; (2) virtually alike, i.e., brought to adjudicate the same underlying rights of the parties, but perhaps seeking different remedies; or (3) insufficiently similar to warrant the doctrine's application. In order to determine whether the actions are virtually alike, we must examine the pleadings . . . to ascertain whether the actions are brought to adjudicate the same underlying rights of the parties. . . . The trial court's conclusion on the similarities between the cases is subject to our plenary review. . . .

"Following that initial determination, the court must proceed to a second step. If the court has concluded that the cases are exactly alike or insufficiently similar, the court has no discretion; in the former situation, it must dismiss the second action, and in the latter, it must allow both cases to proceed. . . . Where actions are virtually, but not exactly alike, however, the trial court exercises discretion in determining whether the circumstances justify dismissal of the second action." (Citation omitted; internal quotation marks omitted.) *MacDermid, Inc.* v. *Cookson Group, PLC*, 149 Conn. App. 571, 576–77, 89 A.3d 447, cert. denied, 312 Conn. 914, 93 A.3d 597 (2014); see also *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 395–98, 973 A.2d 1229 (2009); *Selimoglu* v. *Phimvongsa*, 119 Conn. App. 645, 650 n.4, 989 A.2d 121, cert. denied, 296 Conn. 902, 991 A.2d 1103 (2010).

Although the prior pending action doctrine properly is raised via a motion to dismiss, "it does not truly implicate subject matter jurisdiction [and] may not, therefore, as is true in the case of classic subject matter jurisdiction, always be raised at any time." (Internal quotation marks omitted.) *Geremia* v. *Geremia*, 159 Conn. App. 751, 762 n.10, 125 A.3d 549 (2015); see also *710 Long Ridge Operating Co. II, LLC* v. *Stebbins*, 153 Conn. App. 288, 293–94, 101 A.3d 292 (2014); *Travelers Casualty & Surety Co. of America* v. *Caridi*, 144 Conn. App. 793, 804 n.9, 73 A.3d 863 (2013).

A

In light of these principles, we first consider the denial of the motion to dismiss filed on December 23, 2013. The Luongo parties argue that the one sentence denial established that Judge Aurigemma failed to perform the "required legal analysis . . . ."[7] In essence, the Luongo parties ask this court to presume error on the part of Judge Aurigemma. We decline to do so.

At the outset, we note that the Luongo parties failed to seek an articulation of the order denying their December 23, 2013 motion to dismiss. In this instance, the court was not required to issue a memorandum of decision setting forth its reasoning as to each claim of law raised by the parties and the factual basis thereof. See Practice Book §§ 6-1 and 64-1. The Luongo parties, nonetheless, were obligated to provide this court with

an adequate record to review their claim pertaining to the denial of the motion to dismiss. See Practice Book § 61-10 (a). Although the court did not state the rationale for its denial of the motion to dismiss, we note that at the time of the filing of this motion, and the court's decision, the parties were not the same in the two actions as a result of the denial of MacFarlane's motion to cite in Luongo in the New Haven case.

The Luongo parties ask that we assume that the court failed to apply the proper analytical framework and "abused [its] discretion in simply not entertaining said motion to dismiss . . . ." This request runs afoul of our established law. "Unless the contrary appears in the record, we will presume that the trial court acted properly and considered applicable legal principles." (Internal quotation marks omitted.) *Rozbicki* v. *Gisselbrecht*, 155 Conn. App. 371, 379, 110 A.3d 458, cert. denied, 317 Conn. 905, 114 A.3d 1221 (2015); see also *Sosin* v. *Sosin*, 300 Conn. 205, 244, 14 A.3d 307 (2011) (in absence of articulation, Supreme Court will presume trial court acted properly). Stated slightly differently, this court does not presume error by the trial court where the party challenging the court's ruling failed to satisfy its burden of demonstrating that it was factually or legally untenable. *Kindred Nursing Centers East, LLC* v. *Morin*, 125 Conn. App. 165, 174, 7 A.3d 919 (2010). We conclude, therefore, that the court properly denied the December 23, 2013 motion to dismiss the Middletown action, which was based on the prior pending action doctrine.

B

We next consider the claim regarding the motion to dismiss filed by Luongo LLC on May 12, 2015. Luongo LLC argued that MacFarlane's counterclaims should be dismissed on the basis of the prior pending action doctrine because he "had [a] full opportunity to litigate, and chose not do so," in the New Haven action prior to its withdrawal on April 15, 2014. To be clear on the time line of events, this motion was filed after the conclusion of the trial in the Middletown action, but prior to the release of Judge Aurigemma's decision on the merits. MacFarlane filed his objection to the motion to dismiss on June 23, 2015, five days after Judge Aurigemma issued her memorandum of decision on the merits of the Middletown action.

The court denied Luongo LLC's motion to dismiss on June 22, 2015. It concluded that the motion "should have been raised at trial and was filed on May 12, 2015, after the trial was complete." On appeal, Luongo LLC claims that the court "never properly entertained" this motion to dismiss. We conclude that this argument is without merit.

As noted previously, the prior pending action doctrine does not truly implicate the subject matter jurisdic-

tion of the trial court and thus may not be raised at any time. *710 Long Ridge Operating Co. II, LLC* v. *Stebbins*, supra, 153 Conn. App. 294. Additionally, the policy underlying this doctrine is to relieve the burden of unnecessary litigation. *Lodmell* v. *LaFrance*, 154 Conn. App. 329, 333, 107 A.3d 975 (2014), cert. denied, 315 Conn. 921, 107 A.3d 959 (2015). The goal of the doctrine is not served when the second action, i.e., the case filed in New Haven, has been withdrawn and is no longer crowding a busy court docket. See id. Finally, this court has concluded that once a second action has been withdrawn, "there is no action pending to implicate the prior pending action doctrine." *710 Long Ridge Operating Co. II, LLC* v. *Stebbins*, supra, 293 n.7; see also *Kleinman* v. *Chapnick*, 140 Conn. App. 500, 505, 59 A.3d 373 (2013) (doctrine permits court to dismiss second action that raises issues *currently* pending before court); *Stephenson* v. *Shelton*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-09-5009876, 2009 WL 2962131, *1 (August 7, 2009) (same). For these reasons, we conclude that the court properly denied the motion to dismiss filed by Luongo LLC on May 12, 2015.[8]

## II

The Luongo parties next claim that the court improperly denied their motion for summary judgment with respect to MacFarlane's counterclaim. Specifically, they argue that the court, *Domnarski, J.*, failed to properly analyze and consider the claim regarding the applicability of the prior pending action doctrine and that MacFarlane failed to submit evidence that created a genuine issue of material fact. We are not persuaded.

On April 14, 2014, the Luongo parties filed a motion for summary judgment pursuant to Practice Book § 17-44 et seq. They argued that no genuine issues of material fact existed and that, on the basis of Judge Wilson's opinion in the New Haven action denying the motion to cite in Luongo, MacFarlane's counterclaim in the Middletown action violated the prior pending action doctrine. Finally, they also raised the defenses of waiver and equitable estoppel.

On June 4, 2014, Judge Domnarski issued an order denying the motion for summary judgment. The court stated: "After careful consideration of the briefs and arguments, the court concludes there are genuine issues of material fact pertaining to both the plaintiff's claims against the defendant and the defendant's claims against the plaintiff. These issues revolve around the actions and statements of both the plaintiff and the defendant pertaining to this construction dispute." On June 24, 2014, Luongo LLC filed a motion to reargue and reconsider, which the court denied on July 3, 2014.

"The standard of review of motions for summary judgment is well settled. Practice Book § 17-49 provides

that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Abendroth* v. *Moffo*, 156 Conn. App. 727, 730–31, 114 A.3d 1224, cert. denied, 317 Conn. 911, 116 A.3d 309 (2015).

A

On appeal, the Luongo parties again assert that the court failed to perform the proper analysis of the claim regarding MacFarlane's counterclaim and the prior pending action doctrine. Judge Domnarski stated that he had considered the arguments of the parties and concluded that genuine issues of material fact existed, precluding him from granting the motion for summary judgment. We disagree, therefore, with the bald assertion offered by the Luongo parties that the court did not consider the claim regarding the prior pending action doctrine. As we noted in part I A of this opinion, we do not presume error on the part of the trial court. See, e.g., *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013) ("[i]n Connecticut, our appellate courts do not presume error on the part of the trial court"). Accordingly, we are not persuaded that the court improperly denied the motion for summary judgment filed by Luongo LLC.

B

The Luongo parties also argue that the court improperly denied their motion for summary judgment, which raised the defenses of waiver[9] and estoppel.[10] Specifically, they contend that MacFarlane failed to submit evidence demonstrating the existence of a genuine issue of material fact, and therefore, the court should have granted their motion for summary judgment. We are not persuaded.

In the motion for summary judgment, Luongo LLC argued that Coppola had sent a letter detailing a "punch list" of items that needed to be completed, along with a check for $20,000. This document also requested that Luongo provide a final balance. Luongo LLC also submitted a letter dated August 1, 2011, that informed MacFarlane and Coppola that the final balance owed was $18,959. Luongo LLC also attached an affidavit from Luongo in which he claimed that he had made the repairs indicated on the "punch list," and that MacFarlane had "sign[ed] off" on the repairs. Luongo further

indicated that upon completing the requests on the "punch list," he had completed the contract and was entitled to the balance of $18,959. As a result, Luongo claimed that any claims not contained in the "punch list" were waived and that MacFarlane was estopped from pursuing an action.

The Luongo parties assume that the burden of establishing that there was no genuine issue of material fact with respect to waiver and estoppel had been met. They then contend that MacFarlane did not provide any evidence that created a genuine issue of material fact; thus, the Luongo parties were entitled to summary judgment. We reject this argument for two reasons.

First, the court did not determine that the Luongo parties had, in fact, met their burden of demonstrating the absence of a genuine issue of material fact with respect to waiver and estoppel. As stated in the order, the court considered the briefs and arguments of the parties and concluded that genuine issues of material fact remained. Unless and until the Luongo parties, as the parties moving for summary judgment, met their burden of establishing that no genuine issue of material fact existed, MacFarlane, the nonmoving party, had no obligation to submit evidence establishing the existence of such an issue. See, e.g., *Capasso* v. *Christmann*, 163 Conn. App. 248, 257, 135 A.3d 733 (2016); see *also Allstate Ins. Co.* v. *Barron*, 269 Conn. 394, 405, 848 A.2d 1165 (2004) (when documents submitted in support of motion for summary judgment fail to establish absence of genuine issue of material fact, nonmoving party has no obligation to submit documents establishing existence of such issue); *Mott* v. *Wal-Mart Stores East, LP*, 139 Conn. App. 618, 627, 57 A.3d 391 (2012) (same).

Second, we note that "[o]ur Supreme Court had held that absent exceptional circumstances, a denial of a motion for summary judgment is not appealable where a full trial on the merits produces a verdict against the moving party. . . . The rationale for this rule is that a decision based on evidence presented at trial precludes review of a decision made on less summary judgment evidence." (Citations omitted; internal quotation marks omitted.) *Brown* v. *State Farm Fire & Casualty Co.*, 150 Conn. App. 405, 410, 90 A.3d 1054, cert. denied, 315 Conn. 901, 104 A.3d 106 (2014); see also *Smith* v. *Greenwich*, 278 Conn. 428, 464–65, 899 A.2d 563 (2006); *Greengarden* v. *Kuhn*, 13 Conn. App. 550, 552, 537 A.2d 1043 (1988).

In the memorandum of decision on the merits, after hearing all of the evidence in this case, the court rejected the claims of waiver and estoppel raised by Luongo LLC.[11] Under the circumstances of this case, there is no reason to depart from the general rule that a denial of a motion for summary judgment need not be reviewed following a subsequent trial and decision on the merits. Accordingly, we conclude that the court

properly denied the motion for summary judgment.

### III

Finally, the Luongo parties claim that the court improperly awarded punitive damages to MacFarlane. Specifically, they challenge the court's finding of recklessness with respect to the construction of the house. They further argue that absent this reckless conduct, punitive damages were not warranted.[12] We disagree that the court's finding of recklessness was improper, and, therefore, conclude that the court did not abuse its discretion by awarding punitive damages.

In count two of the counterclaim, MacFarlane alleged that Luongo LLC had held itself out as a new home contractor and that the house had not been completed as represented in the plan and specifications. Further, MacFarlane claimed that Luongo had represented that "he would personally supervise the contractors and subcontractors in connection with the construction of the house, yet the finished house contained numerous defects in material and workmanship resulting in leaks, heaving floors, and a [G]erry-rigged heating system, to name a few, all to [MacFarlane's] loss and damage." MacFarlane also claimed that these actions, standing alone and as result of violating §§ 20-417d through 20-417g, constituted a violation of CUTPA.

The court found that the Luongo parties had violated § 20-417d and thus violated CUTPA. It then turned to the issue of punitive damages under CUTPA.[13] "Mere negligent workmanship might not justify an award of punitive damages. However, in this case [the Luongo parties] disregarded the modular home manufacturer's instructions and recommended installation methods. According to . . . Rocco, those instructions were not complex, but, rather, were consistent with good construction practice. A contractor with the experience and integrity that Luongo, LLC held itself out to be would surely have insured that the beams running through the first floor of the house were straight and would have bolted roof beams so that the walls in the house were not under constant torque, which made the drywall crack. The construction of the house described by . . . Rocco as 'shocking' combined with the failure to comply with . . . § 20-417d justify the conclusion that the conduct . . . was reckless within the meaning of CUTPA, and that punitive damages should be awarded by the court."

Our Supreme Court has stated that "[a]warding punitive damages and attorney's fees under CUTPA is discretionary . . . and the exercise of such discretion will not ordinarily be interfered with on appeal unless the abuse is manifest or injustice appears to have been done. . . . In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton

violation of those rights. . . . In fact, the flavor of the basic requirement to justify an award of punitive damages is described in terms of wanton and malicious injury, evil motive and violence." (Citation omitted; internal quotation marks omitted.) *Ulbrich* v. *Groth*, supra, 310 Conn. 446; see also *Votto* v. *American Car Rental, Inc.*, 273 Conn. 478, 486, 871 A.2d 981 (2005) (trial court exercises discretion to award punitive damages under CUTPA after finding party acted recklessly); *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 139–40, 30 A.3d 703 (under CUTPA, punitive damages awarded in amounts equal to or multiples of actual damages and are focused on deterrence rather than compensation), cert. granted, 303 Conn. 904, 905, 31 A.3d 1179, 1180 (2011) (appeals withdrawn January 26 and 27, 2012).

Rocco, MacFarlane's expert, noted in his report that the steel beams and lolly columns that supported the home were not installed properly. It would have been "very easy" to check the elevation and the beam's level with a laser transit, and it was "enormously important" to do so; nevertheless, the Luongo parties failed to do so. (Emphasis omitted.) Compounding these errors was the failure to secure the beams and columns to prevent the beams from shifting. Rocco described the construction as "haphazard" and stated that it led to a "domino effect" of problems in the house. Rocco further noted the errors of Luongo LLC to follow the plans leading to the issues with the placement of the cellar stairs, resulting in a smaller usable space in the garage than MacFarlane had bargained for.

These facts support the court's determination that the Luongo parties had failed to follow the specifications of the home manufacturer and performed the "crucial" work of setting the foundation and beams in a "shockingly" poor manner. The attempts to place blame on third parties for the substandard construction work ignores the contractual responsibility of Luongo LLC to provide MacFarlane with a completed modular home with a three car garage. The contract further required that all work was "guaranteed to be as specified and . . . performed in accordance with the drawing and specifications provided . . . [and] completed in a substantial workman-like manner . . . ." (Emphasis omitted.)

On the basis of the record before us, we cannot conclude that the court abused its discretion in awarding punitive damages. A flood of defects cascaded as a result of the "shockingly" poor installation of the beams and columns and failure to follow the specifications and recommended installation methods[14] of the home manufacturer. This conduct, coupled with the failure to comply with the requirements of § 20-417d, led the court to conclude that there had been recklessness within the meaning of CUTPA and thus punitive dam-

ages were appropriate. "Punitive damages are awarded when the evidence shows a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) *Tessmann* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 54–55, 634 A.2d 870 (1993) (no abuse of discretion to award punitive damages under CUTPA where contractors' numerous derelictions included representation that it would do work using its own employees but in fact relied on subcontractors, driveway not constructed to afford easy access to kitchen to accommodate plaintiff's medical condition, driveway leaked water into basement, skylight leaked and contractor refused to correct it, claiming it was merely condensation and poor grading caused water to leak into basement near electrical panel); see also *Ulbrich* v. *Groth*, supra, 310 Conn. 446–47. Accordingly, we disagree that the court abused its discretion in awarding punitive damages under CUTPA.

The judgment is affirmed.

In this opinion LAVINE, J., concurred.

[1] "The New Home Construction Contractors Act, which took effect on October 1, 1999, regulates the activities of new home construction contractors. The act requires a contractor to obtain a certificate of registration from the commissioner of consumer protection (commissioner) before he or she may engage in the business of new home construction or hold himself or herself out as a new home construction contractor . . . . The act also specifies the circumstances under which the commissioner may revoke, suspend or refuse to issue or renew a certificate of registration. . . . Other provisions of the act affirmatively regulate the conduct of new home construction contractors, prohibit new home construction contractors from engaging in certain activities and set forth various requirements as to the format and content of new home construction contracts.

"The act further provides three distinct penalties for a violation of its provisions. First, the act empowers the commissioner to impose a civil penalty on, among others, any person who engages in or practices the work for which a certificate of registration is required by [the act] . . . without having first obtained such a certificate of registration or any person who violates any of the provisions of [the act] . . . . Second, the act provides that any person who violates any provision of subsection (d) of section 20-417d shall be guilty of a class A misdemeanor. . . . *Finally, the act provides that a violation of any of its provisions shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b* . . . ." (Citations omitted; emphasis added; footnotes omitted; internal quotation marks omitted.) *D'Angelo Development & Construction Co.* v. *Cordovano*, 278 Conn. 237, 243–45, 897 A.2d 81 (2006).

[2] General Statutes § 21-86 provides: "No person shall sell at retail a new mobile manufactured home or a new modular or prefabricated home in this state without a written manufacturer's warranty to the buyer containing the following terms:

"(1) That such home is free from any substantial defects in materials or workmanship in the structure, plumbing, heating and electrical systems and all appliances and other equipment installed or included therein or thereon by the manufacturer.

"(2) That the seller or manufacturer shall take appropriate corrective action at the site of such home in instances of substantial defects in materials or workmanship which become evident within one year from the date of delivery of such home to the buyer, provided the buyer gives written notice of such defects to the seller, manufacturer or dealer at his business address as soon as such defects become evident. The warranty provided herein shall be in addition to and not in derogation of any other right or privilege which the buyer may have as otherwise provided by law or instrument. The seller or manufacturer shall not require the buyer to waive his rights under this chapter and any waiver shall be deemed contrary to public policy and shall

be void and unenforceable. Any action instituted by a buyer for failure of the manufacturer to comply with the provisions of this chapter shall allow the recovery of court costs and reasonable attorney's fees."

[3] Punitive damages awarded as a result of a violation of CUTPA focus on deterrence, rather than compensation and often are awarded as a multiple of actual damages. See, e.g., *Bridgeport Harbour Place I, LLC* v. *Ganim*, 131 Conn. App. 99, 144–45, 30 A.3d 703, cert. granted, 303 Conn. 904, 905, 31 A.3d 1178, 1180 (2011) (appeals withdrawn January 26 and 27, 2012).

[4] On July 27, 2015, the court awarded MacFarlane $47,359 in attorney's fees. The Luongo parties have not challenged the awarding of attorney's fees in the case.

[5] We note that as a result of Judge Wilson's subsequent order denying the motion to cite in, Luongo was not added as a party in the New Haven action.

[6] "The law of the case doctrine expresses the practice of judges generally to refuse to reopen what [already] has been decided . . . . New pleadings intended to raise again a question of law which has been already presented on the record and determined adversely to the pleader are not to be favored. . . . [When] a matter has previously been ruled [on] interlocutorily, the court . . . may treat that [prior] decision as the law of the case, if it is of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance. . . . A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment." (Internal quotation marks omitted.) *Brown* v. *Otake*, 164 Conn. App. 686, 702–703, 138 A.3d 951 (2016).

[7] The Luongo parties also suggested that MacFarlane had a fair opportunity to litigate the claims set forth in the counterclaim in the Middletown case in his action filed in New Haven. In other words, they insinuate that the doctrine of collateral estoppel was intertwined with the claim of the prior pending actions doctrine.

"Under Connecticut law, [c]ollateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. . . . The doctrine of collateral estoppel is based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate." (Internal quotation marks omitted.) *Gateway, Kelso & Co.* v. *West Hartford No. 1, LLC*, 126 Conn. App. 578, 583–84, 15 A.3d 635, cert. denied, 300 Conn. 929, 16 A.3d 703 (2011). To the extent that they have advanced a claim of collateral estoppel, we decline to consider it because it was not raised in the trial court, addressed by the trial court, or briefed adequately.

[8] We may affirm a proper result of the trial court for a different reason. *Rafalko* v. *University of New Haven*, 129 Conn. App. 44, 51 n.3, 19 A.3d 215 (2011).

[9] "[A] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. An effective waiver presupposes full knowledge of the right or privilege allegedly [being] waived and some act done designedly or knowingly to relinquish it. . . . Moreover, the waiver must be accomplished with sufficient awareness of the relevant circumstances and likely consequences." (Internal quotation marks omitted.) *Chang* v. *Chang*, 170 Conn. App. 822, 830, 155 A.3d 1272, cert. denied, 325 Conn. 910, 158 A.3d 321 (2017).

[10] "Equitable estoppel is a doctrine that operates in many contexts to bar a party from asserting a right that it otherwise would have but for its own conduct. . . . In its general application, we have recognized that [t]here are two essential elements to an estoppel—the party must do or say something that is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief, and the other party, influenced thereby, must actually change his position or do some act to his injury which he otherwise would not have done." (Internal quotation marks omitted.) *St. Germain* v. *St. Germain*, 135 Conn. App. 329, 334–35, 41 A.3d 1126 (2012).

[11] Specifically, the court stated: "[Luongo LLC] has argued that this payment and letter from . . . Coppola evidenced MacFarlane's satisfaction with the house. The court does not agree with this characterization. In July, 2011, [MacFarlane] had not yet retained any experts to assess [Luongo LLC's]

work and had no idea about the major errors in workmanship which had occurred. He knew the house had cracks, but did not know that due to improper bolting of the ceiling beams, the drywall in the house would continue to crack for years. He knew that there was a huge ridge running through the first floor of his house, but did not know that this was due to the failure to use any effort to make sure that the beams were set level.''

[12] The Luongo parties do not challenge the amount of punitive damages awarded in the present case.

[13] We note that our Supreme Court has instructed that "CUTPA is, on its face, a remedial statute that broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . . [CUTPA] provides for more robust remedies than those available under analogous common-law causes of action, including punitive damages . . . and attorney's fees and costs, and, in addition to damages or in lieu of damages, injunctive or other equitable relief." (Internal quotation marks omitted.) *Artie's Auto Body, Inc.* v. *Hartford Fire Ins. Co.*, 317 Conn. 602, 623, 119 A.3d 1139 (2015).

[14] Rocco described the home manufacturer's instructions and recommended installation methods as "not complex" and "consistent with good construction practice."